# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-1988

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JOSE LUIS DIAZ-JIMENEZ,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 09-CR-262—**Rudolph T. Randa**, *Judge*.

ARGUED AUGUST 4, 2010—DECIDED SEPTEMBER 8, 2010

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant, a Mexican citizen, pleaded guilty to having been present in the United States illegally because he had been removed as a consequence of having been convicted of an aggravated felony (car theft). 8 U.S.C. §§ 1326(a), (b)(2). He had re-entered the United States on four previous occasions after his conviction but on each occasion had been sent back to Mexico without being prosecuted.

In exchange for his pleading guilty to the immigration offense, the government agreed to recommend a sentence at the bottom of the guidelines range, which was 18 to 24 months. But at the sentencing hearing the prosecutor, mistakenly though apparently in good faith, initially recommended that the defendant be sentenced at the top of the range. (The prosecutor may have failed to review the plea agreement before the hearing.) He emphasized the defendant's repeated illegal entries into the United States after being removed. "So a significant penalty has to be applied so . . . it is more aversive for him to come back to more time in prison, than it is for him to just try his luck again. Our recommendation, Judge, is the Court impose 24 months, the high end of the guideline range."

Defense counsel immediately objected on the basis of the government's promise in the plea agreement. The prosecutor responded by saying "I see that, Judge. It's my fault . . . . I got the morning wrong, and the afternoon wrong" (he had said to the judge at the beginning of the sentencing hearing "Good afternoon again, Your Honor," when actually it was morning) "and my recommendation wrong. I think, Judge, the point is that a significant sentence needs to be meted out so that it is aversive enough to keep the Defendant from coming back. The reality of whether it's 18 months or greater, that is still a significant period of time. And we'd ask the Court to impose that low end of the guideline range, no greater than is necessary to achieve the result. I suppose a larger sentence could be appropriate, but

that is the least amount that is necessary to achieve the desired result. And for that reason, it's appropriate under [18 U.S.C. §] 3553[a]." Defense counsel responded: "I guess after that kind of mixed recommendation for a low end, I would state that I believe a low end would be appropriate in this case." He explained that the defendant was young and had gotten into trouble by taking illegal drugs but was not a dealer.

Without mentioning the government's recommendation in the plea agreement, or the prosecutor's mistake and retraction, the judge sentenced the defendant to 21 months in prison. The judge would have given him 24 months, he said, had he not wanted to save the taxpayer the estimated $6,000 cost of imprisoning the defendant for another three months.

The defendant argues that the government violated the plea agreement and that he should be resentenced by a different judge. There is an initial question whether defense counsel failed to challenge the violation in the district court, and thus committed a forfeiture that would limit the scope of our appellate review to correction of a "plain error" by the district court. We think not. He did object, and having done so explained why he thought his client should be sentenced at the bottom of the guidelines range, as the government had promised to recommend. He remarked that the government's recommendation was "mixed," and that is an apt characterization, as we'll see.

A plea agreement is a form of contract. A breach is actionable, and a minimum remedy is specific perform-

ance and resentencing by a different judge. *Santobello v. New York*, 404 U.S. 257, 263 (1971); *United States v. Grimm*, 170 F.3d 760, 765 (7th Cir. 1999); *United States v. Griffin*, 510 F.3d 354, 367 (2d Cir. 2007). Maximum is allowing the defendant to withdraw his plea; the Court in *Santobello* left it to the lower court "to decide whether the circumstances of this case require *only* that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the [lower] court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty." 404 U.S. at 263.

The second alternative, rescission of the plea agreement, is not adequate if the defendant doesn't want to withdraw his plea and gamble on negotiating a better agreement; and our defendant doesn't want to do that. So the only question is whether the breach was material. In contract law, although a breach is a breach, if it causes no harm then all that the other party is entitled to by way of remedy is nominal damages, which means, as a practical matter, no relief. *Habitat Education Center v. U.S. Forest Service*, 607 F.3d 453, 460-61 (7th Cir. 2010). The cases reach the same result when the breach of a plea agreement is, in the court's view, insubstantial, immaterial, technical—in short, minor—or cured on the spot and in either case undeserving of substantial relief such as resentencing or withdrawal of a guilty plea. E.g., *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006); *United States v. Amico*, 416 F.3d 163, 165-68 and n. 3 (2d Cir. 2005).

The government's recommendation for lenity is an important part of the consideration for a defendant's entering a plea of guilty (though often the most important part is the guidelines sentencing discount for acceptance of responsibility, which ordinarily requires such a plea). But most courts, including our own, have not taken the extreme position that *any* violation of a promise to recommend a lighter sentence than might be expected automatically requires reversal—that it can never be deemed minor or curable. *United States v. Salazar*, 453 F.3d 911, 915 (7th Cir. 2006). Even cases that lean toward a rule of automatic reversal (and they are the minority) recognize exceptions. See, e.g., *United States v. E.V.*, 500 F.3d 747, 754-55 and n. 13 (8th Cir. 2007); *United States v. Mosley*, 505 F.3d 804, 810 n. 1 (8th Cir. 2007). Although *United States v. Kurkculer*, 918 F.2d 295, 302 (1st Cir. 1990), does not, a later decision by the same court does. *United States v. Clark*, 55 F.3d 9, 13 n. 3 (1st Cir. 1995).

Oddly, the cases conjoin recognition of exceptions with rejection of the application of the doctrine of harmless error, e.g., *United States v. Mosley, supra*, 505 F.3d at 810; *United States v. VanDam*, 493 F.3d 1194, 1202-03 (10th Cir. 2007); cf. *Dunn v. Colleran*, 247 F.3d 450, 461 (3d Cir. 2001); *United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir. 2000); but see *United States v. Belt*, 89 F.3d 710, 713 (10th Cir. 1996), and try to square the circle by remarking, for example, that *Santobello* "rejected the argument that the breach of the plea agreement was harmless" but "does not amplify the parameters of what constitutes a breach." *Smith v. Stegall*, 385 F.3d 993, 999

(6th Cir. 2004). We can't see the difference between calling a breach of the plea agreement a harmless error and calling it immaterial. Anyway the Supreme Court in *Santobello* didn't say that the doctrine of harmless error is inapplicable to breach of a plea agreement; it said that the fact that the prosecutor's error was inadvertent did not excuse the breach, that the judge's saying he hadn't been influenced by the prosecutor's error was also not a cure, and that the defendant was entitled to enforcement of the government's promise in the plea agreement. None of that amounts to saying that the defendant would be entitled to enforcement even if, were the agreement a civil contract, he would not be because the breach was inconsequential.

The Court later declared it an open question "whether *Santobello*'s automatic-reversal rule has survived our recent elaboration of harmless-error principles in such cases as [*Arizona v.*] *Fulminante*[, 499 U.S. 279, 310 (1991)] and *Neder* [*v. United States*, 527 U.S. 1, 9 (1999)]." *Puckett v. United States*, 129 S. Ct. 1423, 1432 n. 3 (2009). This makes it sound as if *Santobello* had rejected the application of the doctrine of harmless error to breaches of plea agreements. But this interpretation is undermined by the Court's discussion in the text of *Puckett* to which the footnote from which we just quoted is appended. The doctrine of harmless error is generally held inapplicable only to fundamental procedural errors (confusingly called "structural" errors), such as refusing to allow a criminal defendant to be represented by a lawyer. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149-50 (2006); *Ashford v. Gilmore*, 167 F.3d 1130, 1136 (7th

Cir. 1999). The Court in *Puckett* said that "breach of a plea deal is not a 'structural' error as we have used that term. We have never described it as such, and it shares no common features with errors we *have* held structural. A plea breach does not 'necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence'; it does not 'defy analysis by "harmless-error" standards' by affecting the entire adjudicatory framework and the 'difficulty of assessing the effect of the error' is no greater with respect to plea breaches at sentencing than with respect to other procedural errors at sentencing, which are routinely subject to harmlessness review. *Santobello* did hold that automatic reversal is warranted when an objection to the Government's breach of a plea agreement has been preserved, but that holding rested not upon the premise that plea-breach errors are (like 'structural' errors) somehow not *susceptible,* or not *amenable,* to review for harmlessness, but rather upon a policy interest in establishing the trust between defendants and prosecutors that is necessary to sustain plea bargaining—an 'essential' and 'highly desirable' part of the criminal process." 129 S. Ct. at 1432 (citations omitted; emphases in original). In neither *Santobello* nor *Puckett* did the Court say that the maintenance of this trust excludes a concept of immaterial breach.

It's true, as the defendant's lawyer reminds us, that a bell cannot be unrung. But a mistake is not a bell, and usually can be corrected. While *Santobello* and the cases following it do not allow the judge to dissolve the error

by stating that he won't be influenced by it, *Santobello v. New York, supra*, 404 U.S. at 262-63; *United States v. Williams*, 102 F.3d 923, 926 n. 5 (7th Cir. 1996); *United States v. Griffin*, 510 F.3d 354, 366 (2d Cir. 2007), as that is too facile a cure, subsequent actions by the prosecution can justify an inference that the error was indeed harmless. *United States v. Amico, supra*, 416 F.3d at 165; *United States v. Brody*, 808 F.2d 944, 948 (2d Cir. 1986). Suppose the prosecutor in this case had said, after his mistake was pointed out, "I misremembered the plea agreement. I agree unreservedly with the recommendation in the plea agreement for an 18-month sentence. That sentence would in our opinion be sufficient; we do not think there is any need for a longer sentence." Such a corrective statement would be analogous to a contract party's curing his breach before it did any harm to the other party. See, e.g., UCC § 2-508(1); *Bodine Sewer, Inc. v. Eastern Illinois Precast, Inc.*, 493 N.E.2d 705, 711-12 (Ill. App. 1986).

We are not suggesting "safe harbor" language, or that a properly abject apology and retraction are a sure cure for any misrepresentation of the terms of a plea agreement. The prosecutor might have indicated by his remarks before the mistake was discovered his strong commitment to a sentence at the high end of the guidelines. He didn't quite do that in this case. But neither did he make the kind of unequivocal retraction that we illustrated in the preceding paragraph. He began his acknowledgment of error by equivocating over whether an adequately "aversive" sentence, in light of the defendant's yo-yoing across the U.S.-Mexican border, was

18 months (the recommendation in the plea agreement) or "greater." This equivocation undermined his endorsement of the recommendation in the plea agreement. In emphasizing the need for a sentence that would discourage the defendant from again returning to the United States, he was making a point that the judge in sentencing the defendant to 21 months called "a great point."

The prosecutor further undermined the plea agreement by saying "I suppose a larger sentence could be appropriate, but that [i.e., an 18-month sentence] is the least amount that is necessary to achieve the desired result." If 18 months is the *least* amount of prison time necessary to deter the defendant from returning illegally to the United States, and a longer sentence might therefore be appropriate, this is recommending to the judge, inconsistently with the plea agreement, that he sentence the defendant to *at least* 18 months, and more if the judge wants, since a longer sentence could be "appropriate" too.

So there was a serious breach of the plea agreement, and so the defendant is entitled to be resentenced by a different judge. Of course the new judge will have read this opinion before sentencing the defendant. But that doesn't mean the judge will be influenced by the "mixed" recommendation. We expect that a different prosecutor from the U.S. Attorney's office will appear before that judge, apologize for the clumsy mistake of the previous prosecutor, and recommend an 18-month sentence without any ifs, ands, or buts. That will pro-

vide the defendant with adequate relief—indeed as much relief as he is asking for in this appeal.

REVERSED AND REMANDED,
WITH DIRECTIONS.