In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2039

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARACELY GAONA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:10-cr-00064-RTR-11—**Rudolph T. Randa,** *Judge.*

ARGUED SEPTEMBER 5, 2012—DECIDED OCTOBER 5, 2012

Before BAUER, MANION, and TINDER, *Circuit Judges.*

BAUER, *Circuit Judge.* The defendant-appellant, Aracely Gaona, entered into a plea agreement that required the Government to refrain from making a specific sentencing recommendation. Gaona contends the Government breached the plea agreement and now seeks specific performance of that agreement before a different judge. Finding that Gaona waived her objection to any breach of the plea agreement, we affirm.

## I. BACKGROUND

Beginning in at least January 2004 and continuing until March 16, 2010, Gaona's older brothers, Ruben and Asencion Gaona, in addition to other participants, engaged in a large-scale cocaine and marijuana drug conspiracy. In short, participants in the scheme would send cocaine and marijuana from El Paso, Texas, to Milwaukee, Wisconsin, where other associates would receive the drugs. Family or close friends of the participants would then either wire the drug sale proceeds back to El Paso, Texas, or transport the proceeds by car under the guise of a family trip. In support of the scheme, Gaona wired $69,631 to Texas; traveled south by car on one occasion with drug proceeds totaling $45,751; accompanied another co-defendant, Gricel Solis, on approximately eight occasions while Solis wired money; and held drug proceeds for her brother Ruben on at least two occasions.

On April 13, 2010, a Grand Jury in the Eastern District of Wisconsin returned an eight-count indictment related to the drug-trafficking scheme in which Gaona participated. The charges included conspiring to distribute cocaine, distributing cocaine, and conspiring to conduct financial transactions in and affecting interstate commerce that involved the proceeds of drug trafficking—more commonly known as money laundering. Twenty-two individuals, including Gaona and her brothers, were implicated in the scheme. The scheme was generally broken down into two separate groups of defendants, drug traf-

fickers and money launderers; Gaona was a member of the latter.

Gaona negotiated a plea agreement with the Government in which she plead guilty to Count Eight of the indictment, money laundering in violation of 18 U.S.C. § 1956. The parties signed and filed the agreement with the district court on January 6, 2012. The part of the plea agreement at issue in this case, Paragraph 21, provides: "The government will not make a specific sentencing recommendation, but is free to present all facts to the court."

Gaona's sentencing hearing was scheduled for Friday, April 20, 2012. At that hearing, the Government described the money laundering as being an essential aspect of the drug conspiracy. The Government also explained the conduct of five of Gaona's co-defendants and the sentences each of those defendants received. The sentences discussed ranged from two years of probation to thirty months in prison. The Government concluded by stating that $69,000, the amount Gaona wired, "is at the top of the drug proceeds that were wired by individuals who participated in the money laundering conspiracy."

Gaona's attorney addressed the court next. Defense counsel argued that a probation sentence was appropriate based on Gaona's role in the scheme, her familial relationship to the other defendants, her education level and career status, and her current pregnancy with her second child. Defense counsel then informed the district court that the Government did not recommend a prison sentence. The following colloquy occurred:

Defense Counsel:   I also think it's important to note, Your Honor, that in this case the Government is not asking the Court to place Miss Gaona in prison. I know that that was the recommendation in some of the cases. The Government is not recommending a prison sentence here.

The Government:   Judge, I'm going to jump in here. That's not accurate. I was asked to make a no sentence recommendation, which I did. And to say that I affirmatively said no prison would be an absolute misstatement of my position.

The Court:   All right.

The Government:   I want to make that clear to the Court. That I don't believe this woman should be placed on probation.

Immediately following this exchange, defense counsel argued that the Government's clarification statement violated Paragraph 21 of the plea agreement. Although not conceding that a breach had occurred, the Government stated that it had no objection to Gaona withdrawing her plea. The district court, in response to the dispute, acknowledged the distinction between the Government's obligation under the plea agreement (to refrain from making a specific sentencing recommendation) and defense counsel's charac-

terization of the Government's position (that the Government was not asking the court to place Gaona in prison). Defense counsel, under the impression there was no misunderstanding as to his comment outlining the Government's position, replied:

> And I understand if [the Government] had some—wanted to clarify what I was saying, in the process of doing so she indicated that she objects to the Court placing my client on probation. That is a breach of the Plea Agreement in this case. And my client doesn't want to withdraw her plea. *She wants specific performance of the Plea Agreement.* . . . I think this dispute here. . . may play a role in the Court's decision on what sentence it's going to impose in this case. (emphasis added).

The district court responded by carefully articulating that the Government's position pursuant to Paragraph 21 was not "to be interpreted by the defense as supporting one position or another." Then, recognizing Gaona's argument that the Government's comments constituted a breach of the plea agreement, the district court continued the sentencing hearing until Monday, April 23, 2012, to allow Gaona to consider her options.

The parties reconvened in the afternoon on April 23. Before beginning the sentencing hearing, the district court inquired as to whether Gaona wanted to withdraw her plea or continue with sentencing. The following discussion ensued:

| The Court: | Well, the Court has just stated it's here for a continuation of the sentencing, but is the defense going to move to withdraw its plea? |
| Defense Counsel: | No, it's not, Your Honor. |
| The Court: | So the defense wishes to continue on this case with the sentencing? |
| Defense Counsel: | We do, Your Honor. |
| The Court: | And, Ms. Gaona, you've heard the discussion. Is that your desire, to continue with the sentencing? |
| Ms. Gaona: | Yes, Your Honor. |

The Government and defense counsel were then given the opportunity to restate their respective positions.

The Government again explained the nature of Gaona's crimes and referred the district court back to the April 20 hearing when it compared the facts supporting Gaona's plea to the facts surrounding other codefendants whom the court had previously sentenced. The Government also asked the district court to disregard Gaona's pregnancy when imposing a sentence, describing its timing as "suspect." Conversely, defense counsel attempted to distinguish Gaona from those who were involved in the actual drug trade and asked the district court to align Gaona's sentence with the probation sentence it gave her older sister, Maricela Gaona, earlier that day.

The district court sentenced Gaona to eighteen months' imprisonment, with three years' supervised release,

restitution in the amount of $27,210, and payment of a $100 special assessment. This sentence was in accordance with the sentence given to co-defendant Soccorro Lopez, whom the district court viewed as a similarly-situated defendant. Judgment against Gaona was entered accordingly.

## II. DISCUSSION

Gaona now appeals her sentence, contending that the Government breached the plea agreement in three ways: (1) by stating "I don't believe this woman should be placed on probation" when it responded to defense counsel's characterization of the Government's position pursuant to Paragraph 21; (2) by comparing Gaona to the other co-defendant money launderers sentenced before Gaona and insinuating that Gaona was more culpable; and (3) by calling the timing of Gaona's pregnancy "suspect." The Government contends Gaona has waived her right to raise this issue on appeal.

We must first consider whether Gaona waived or merely forfeited her challenge before we may reach the merits of her argument. "Waiver and forfeiture are related doctrines; waiver occurs when a defendant intentionally relinquishes or abandons a known right, whereas forfeiture occurs when a defendant fails to timely assert his rights." *United States v. Wesley*, 422 F.3d 509, 520 (7th Cir. 2005).

Here, Gaona waived her ability to argue that the Government breached the plea agreement. At the conclusion

of the April 20 hearing, the district court gave Gaona three days to consider how to proceed after hearing the Government's characterization of her conduct and its clarification comments. Gaona unequivocally said "Yes" when asked on April 23 whether the district court should continue with the sentencing. Defense counsel did not move to withdraw Gaona's plea or ask for another judge to sentence Gaona. The district court sentenced Gaona in accordance with her wishes: to be sentenced on that day, by that particular judge. A party cannot later challenge exactly what it asked the court to do. *See Wesley*, 422 F.3d at 520-21. The situation before us amounts to waiver in the simplest sense.

Seeking to avoid this result, Gaona directs our attention to our prior decisions in *United States v. Diaz-Jimenez*, 622 F.3d 692 (7th Cir. 2010) and *United States v. Bartlett*, 567 F.3d 901 (7th 2009). These cases are easily distinguished. In *Diaz-Jimenez*, the defendant was sentenced immediately after the Government's accidental breach of the plea agreement. 622 F.3d at 693-94. The defendant was never given an opportunity to withdraw his plea or request a different course of action. *Id.* at 694. In this case, Gaona had a full opportunity to reflect upon the Government's comments and decide what strategy to pursue. There was also no confusion as to Gaona's options because defense counsel discussed both specific performance and plea withdrawal at the April 20 hearing. *See Santobello v. New York*, 404 U.S. 257, 263 (1971) (noting that the remedies for a prosecutor's violation of a plea agreement during sentencing are specific perfor-

mance of the plea agreement—i.e., sentencing by a different judge—and the opportunity to withdraw a guilty plea).

The issue in *Bartlett* was whether defense counsel was required to "object" on record to a sentence after it had been handed down, even though he had previously argued for a lower sentence. *Bartlett*, 567 F.3d at 910. The district court sentenced the defendant to 208 months imprisonment—twenty months greater than the top end of the Sentencing Guidelines range—and the prosecution contended that the defendant never explicitly objected on record to the heightened sentence after it was given. *Id.* The case involved forfeiture, however, not a strategic decision constituting waiver. *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) ("The touchstone of waiver is a knowing and intentional decision."). The record in this case reveals a strategic decision by Gaona to ignore the breach issue and pursue sentencing with the judge who gave her older sister probation. Thus, although it may have been a reasonable strategy, *see United States v. Grigsby*, No. 11-2473, 2012 U.S. App. LEXIS 18280, at *33 (7th Cir. Aug. 29, 2012) (explaining that "a district court necessarily considers the interest in consistency between similarly situated defendants"), the fact the district court determined Gaona was more similarly situated to a different co-defendant does not entitle Gaona to a second bite at the sentencing apple.

A defendant may elect for strategic reasons to pursue one avenue over another when faced with sentencing, but

doing so, however, may preclude review on appeal. Such a situation is presented here. We find that the unambiguous decision of Gaona and her counsel to continue with sentencing at the April 23 hearing renders Gaona's argument that the Government breached the plea agreement waived. It is unnecessary to reach the merits of Gaona's argument regarding breach of the plea agreement.

## III.  CONCLUSION

For the aforementioned reasons, we AFFIRM the judgment of the district court.