In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2574

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM R. HIBLE,
also known as BILLY HIBLE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:10-cr-20015-MPM-DGB-1—**Michael P. McCuskey**, *Judge.*

ARGUED SEPTEMBER 20, 2012—DECIDED NOVEMBER 8, 2012

Before EASTERBROOK, *Chief Judge*, and MANION and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* William R. Hible appeals his sentence, arguing that he should have been sentenced consistent with the more lenient penalties of the Fair Sentencing Act of 2010 (the Act or FSA), Pub. L. No. 111-220, 124 Stat. 2372. Although under *Dorsey v. United States*, ___ U.S. ___, 132 S. Ct. 2321 (2012), the FSA's more

lenient penalties apply to pre-Act offenders who were sentenced after the Act took effect, we agree with the government that Hible has waived any right to argue that he should have been sentenced under the FSA.

**I**

Hible was charged in a three-count indictment with criminal drug conspiracy involving the distribution of cocaine and crack cocaine from May 2008 through February 2010 and with the distribution of cocaine in October 2009 and distribution of crack cocaine in December 2009 in violation of 21 U.S.C. §§ 841 and 846. In June 2010, the government filed notice pursuant to 21 U.S.C. § 851 that it would seek an enhanced sentence due to Hible's prior felony drug conviction. The law in effect at the time had a mandatory minimum penalty of 10 years' imprisonment and a maximum penalty of life imprisonment for a defendant who distributed 5 grams or more of crack cocaine and had a prior felony drug conviction. *See* 21 U.S.C. § 841(b)(1)(B)(iii) (2006).

On January 12, 2011, a magistrate judge held a change of plea hearing. The government stated its intent to dismiss Counts 1 and 2 at sentencing, and Hible pleaded guilty to Count 3, charging him with distributing 5 grams or more of crack cocaine. The magistrate judge advised Hible of the potential penalties and asked him if he had any questions about them. Hible asserted that he should be sentenced under the new law, the Fair Sentencing Act of 2010. The FSA increased the threshold amount of crack cocaine for certain penalties and as

a result lowered the penalty for offenses involving crack. Under the FSA, a defendant who distributed 12.8 grams of crack and had a prior felony drug conviction faced no mandatory minimum term of imprisonment and a maximum term of imprisonment of not more than 30 years. *See* 21 U.S.C. § 841(b)(1)(B)(iii), (C) (2006 & Supp. IV).

The magistrate judge said he did not know the sentencing judge's position on the applicability of the FSA to defendants such as Hible who committed an offense prior to the change in the law but who would be sentenced afterwards, but advised Hible that he could appeal the decision to sentence him under the "old law," if that was the judge's decision. The prosecutor stated that the Seventh Circuit had rejected Hible's argument that the FSA applies to offense conduct occurring before the law's enactment on August 3, 2010 (presumably referring to *United States v. Bell*, 624 F.3d 803, 814-15 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 2121 (2011), and others), but noted that "the defendant will preserve the right to make that argument." Hible agreed to the factual basis for his plea, including that on December 3, 2009, he sold 12.8 grams of crack cocaine to an informant. Hible pled guilty to the charge of distributing 5 grams or more of crack cocaine. The magistrate judge found that there was a factual basis for the plea, that the plea was knowing and voluntary, and that Hible was guilty as charged in Count 3.

A presentence report was prepared prior to sentencing. The report calculated Hible's base offense level

under the drug quantity guideline, U.S.S.G. § 2D1.1, resulting in a base offense level of 36, based in part on relevant conduct, and after adjustments, a total offense level of 39. The report also calculated Hible's offense level under the career offender guideline, *id.* § 4B1.1, assuming the FSA did not apply, which resulted in a career offender level of 37 and after adjustments, a total offense level of 34. If the FSA applied, however, the career offender guideline total offense level would have been 31. Hible had nine criminal history points, which would put him in criminal history category IV. But under the career offender guideline, every offender is in category VI. *Id.* Using the drug quantity guideline, offense level 39 and criminal history category VI, Hible's advisory guideline range was 360 months to life. Under the career offender guideline, offense level 34 and criminal history category VI, the advisory guideline range was 262 to 327 months. The recommended offense level was the higher of the two levels, that is, the one under the drug quantity guideline (39). *See* U.S.S.G. § 4B1.1(b) ("[I]f the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply."). Thus, the presentence report recommended a guideline range of 360 months to life.

Prior to sentencing, Hible objected to the paragraphs of the presentence report detailing his relevant conduct, which greatly increased the drug quantity for which Hible could be held accountable. His objections did not mention the FSA. In response to the objections, the government said that it "believed . . . a sentence that is suffi-

cient but not greater than necessary to achieve the sentencing purposes of Section 3553(a) can be found within the advisory career offender range" of 262 to 327 months of imprisonment. Although the government agreed with the presentence report's relevant conduct findings, it said that a ruling on Hible's relevant conduct objections was unnecessary.

At sentencing on July 7, 2011, the district court said that it had reviewed the presentence report and noted there were objections "that boil[ed] down to" what the advisory guideline range should be. The court noted that the presentence report recommended an offense level of 39, criminal history category VI, and an advisory guideline range of 360 months to life. The court confirmed that Hible had "no objection to the career offender [guideline], which would put [his] advisory guideline range at 262 to 327" months. The court also confirmed that the government and probation had no objection to using the career offender advisory guideline range of 262 to 327 months as "our starting point." Then the court asked defense counsel, "So, . . . if I agree that our starting point is the career offender advisory guideline range of 262 to 327[,] . . . would that mean that there would be no objections to the presentence report?" Counsel answered, "That's correct," and the prosecutor and probation officer stated that they had no objection to that "starting point." The court said that "[t]he career offender advisory guideline range would start at offense level 34," after factoring acceptance of responsibility, and both the prosecutor and Hible's counsel agreed. Accordingly, the court found "that the

starting point in this case under the advisory guidelines, by agreement of counsel and Probation, is that this is an offense level 34/criminal history category VI and that the advisory guideline range is 262 to 327."

The court reconfirmed with Hible, through counsel and with Hible directly, that he withdrew his objections "with the agreement that the Court start at the offense level 34/criminal history category VI/advisory guideline range 262 to 327, instead of 360 to life." The court found "that all objections have been withdrawn" and "the parties agree that "William Hible is a career of-fender[,] . . . is a criminal history category VI, and . . . has an advisory guideline range of 262 to 327 months be-cause he is an offense level 34 as adjusted." Then the court adopted the presentence report's findings, as amended by the parties' agreement.

Hible offered mitigation evidence, which included evidence to mitigate his career offender status—testimony that although he was convicted of a crime of violence occurring in 2005, he did not actually commit the crime, but pled guilty for other reasons. The govern-ment requested a within-guideline sentence of 25 years (300 months). Hible's attorney recommended a below-guideline sentence of 15 years (180 months). The district court gave Hible a "final break" and considered him to have a criminal history category IV, which provided an advisory guideline range of 210 to 262 months. The court determined that "the appropriate and reasonable" sentence was 240 months.

**II**

Hible appeals his sentence, arguing that the district court should have sentenced him consistent with the more lenient penalties under the FSA. The government argues that Hible has waived his right to appeal this issue. Hible responds that he preserved the issue for review by objecting, *at his plea hearing*, to being sentenced under the old law and asserting that he should be sentenced under the FSA. He does not, however, argue that he asserted any right to be sentenced under the FSA *at his sentencing*. We agree with the government that Hible has waived the right to argue that he should have been sentenced under the FSA.

"[W]aiver occurs when a defendant intentionally relinquishes or abandons a known right." *United States v. Gaona*, ___ F.3d ___, No. 12-2039, 2012 WL 4747196, at *3 (7th Cir. Oct. 5, 2012) (internal quotation marks omitted). We will find waiver when a defendant "[f]or strategic reasons . . . elect[s] to pursue one argument while foregoing another." *United States v. Farmer*, 543 F.3d 363, 371 (7th Cir. 2008); *see also United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) ("[W]hen the defendant selects [from among arguments] as a matter of strategy, he also waives those arguments he decided not to present." (citation omitted)). Waiver precludes appellate review. *United States v. Doyle*, 693 F.3d 769, 771 (7th Cir. 2012).

Hible knew of the FSA; at his plea hearing, he asked to be sentenced under it. Yet at his sentencing, he did not assert a right to be sentenced under the FSA. Instead, he

affirmatively withdrew all objections to the presentence report and agreed that in sentencing (he had not objected that the presentence report did not utilize the FSA in projecting his sentence), the district court should use as a "starting point" an offense level of 34, criminal history category VI, and the career offender advisory guideline range of 262 to 327 months. That this was a conscious, strategic decision is inescapable.

By agreeing to the career offender guideline range, Hible avoided a hearing on relevant conduct and the potentially higher offense level calculated under the drug quantity guideline based on that relevant conduct. He also argued for mitigation of his career offender status. Hible had little to gain in arguing for application of the FSA with no mandatory minimum and a maximum sentence of 30 years when he faced an advisory guideline range of 360 months to life and his counsel recommended a 15-year sentence. Hible's strategic decision paid off: the district court applied the career offender guideline with its lower offense level and considered Hible to have a criminal history category of IV.

Hible argues that he preserved the issue by raising it at his change of plea hearing. As the prosecutor noted at the plea hearing, Hible would "preserve the right *to make*" the argument to be sentenced under the FSA. But Hible never made the argument at sentencing. Instead, he chose to agree with the government that he was a career offender and that the "starting point" was offense level 34, criminal history category VI, and the career offender guideline range of 262 to 327 months. This

amounts to waiver. *See United States v. Harris*, 230 F.3d 1054, 1059 (7th Cir. 2000) (holding that defendant waived any right to a downward departure under the safety-valve provision where the issue was raised in the plea agreement, but the presentence report did not mention the safety-valve provision, and when questioned by the district court, both the defendant and his counsel stated they had no objections to the presentence report other than another, different objection). As noted, the district court gave Hible a "final break" and sentenced him as if he was in criminal history category IV to 240 months.

### III

We AFFIRM Hible's sentence and the district court's judgment.