In the

# United States Court of Appeals
### For the Seventh Circuit

No. 12-1376

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GALE RACHUY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 10-CR-141 — **William M. Conley**, *Chief Judge.*

ARGUED OCTOBER 4, 2013 — DECIDED FEBRUARY 14, 2014

Before EASTERBROOK, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* By almost all accounts Gale Rachuy is a career criminal. Rachuy accumulated, over 40 years, nearly 30 convictions, mostly for fraud. He is a man who has spent many years gaining people's trust only to turn around and betray them. In Rachuy's most recent scheme, he "purchased" six vehicles by writing bad checks drawn on four bank accounts that he knew were closed or

had no funds. Rachuy was indicted on five counts of transporting stolen vehicles across state lines, but pled guilty to one count in exchange for a favorable sentencing recommendation. In exchange for his guilty plea, the government agreed that it would: (1) recommend that the court calculate the loss amount based only on the checks returned on the four bank accounts involved in the purchase of the stolen vehicles; (2) recommend a five-year prison sentence; and (3) not oppose Rachuy's request for the return of his property held by local and state authorities.

On appeal, Rachuy raises a number of arguments. First, he asserts that the government breached the plea agreement by referencing his lengthy criminal history. But the government did not breach the agreement because it had to reference Rachuy's criminal history in order to justify an above-Guideline range sentence. Second, he argues that the government failed to recommend that his loss amount be based solely on the checks used to purchase the vehicles charged in the superseding indictment. However, the government did not breach the deal because it was authorized, per the agreement, to include in the loss calculation any relevant bad checks drawn on the accounts that Rachuy used to steal cars. Third, he contends that the government breached the agreement by opposing his request for the return of his property. Here, too, the government did not breach the agreement because it did not "oppose" his motion in the formal sense, but simply reminded the court that it did not have the power to command local and state authorities to release Rachuy's property. Fourth, he claims that the district court abused its discretion by failing to hold an evidentiary hearing on his request for the return of his property. But the district court was not required to hold a hearing because his

motion improperly asked the court to exceed its jurisdiction, and the court properly dismissed the complaint on jurisdictional grounds. Finally, Rachuy asserts that the district court failed to give him credit, pursuant to U.S.S.G. § 5G1.3(b)(1), for time served on a sentence for a related state conviction. However, Rachuy was not eligible to be sentenced under § 5G1.3(b)(1) since he did not meet the statute's requirements. Because the district court did not commit any errors, we affirm the court's judgment.

## I. BACKGROUND

Between April and August 2010, Gale Rachuy "purchased" six cars by writing bad checks drawn on accounts that he knew were either closed or had no funds, and then drove the cars away. Ultimately, he was charged with five counts of transporting a stolen vehicle across state lines, in violation of 18 U.S.C. § 2312.

On November 8, 2011, Rachuy entered into a written plea agreement with the government where, in exchange for his plea on one count of transporting a stolen vehicle, the government made the following promises:

4. … [T]o recommend that the court calculate loss amount based only on the checks returned on the four bank accounts involved in the purchase of the vehicles charged in the superseding indictment …

5. [T]o jointly recommend that the court impose a five-year sentence of imprisonment …

6. [N]ot to oppose any request by Rachuy for return of any of his property currently held in the custody of state or local authorities.

On the same day, the district court accepted Rachuy's guilty plea.

While he was represented by counsel, Rachuy filed a pro se motion for the return of seized evidence and property with the district court, asking for an order directing state and local authorities to return the evidence they seized during searches of his homes and automobiles. The government filed its own motion, arguing that Rachuy's motion should be denied because he: (1) was represented by counsel; (2) cited no authority to support his request for the district court to order local law enforcement agencies holding his property to return it; and (3) was pursuing the same relief in state court without the government's opposition. The district court agreed with the government's position and denied Rachuy's motion.

On February 3, 2012, the district court held a sentencing hearing at which both sides made a joint recommendation of 60 months' imprisonment. Although this was above Rachuy's advisory Guidelines range of 37 to 46 months, the government filed a sentencing memorandum explaining that the upward variance was warranted because of Rachuy's extensive criminal history and likelihood of recidivism.

At the start of the hearing, the district court calculated Rachuy's Guidelines range and noted "that this defendant has almost 30 convictions over some 40 years, most of which involve fraud … which is an extraordinary criminal history for this court to consider, much less comprehend." The district court then invited the government to present its position on sentencing.

The government stated that it "echo[ed] what the Court ha[d] already said, that one would be hard-pressed to find a defendant with a longer criminal history for fraud than Mr. Rachuy. He's a perfect example of why perhaps there should be a career offender provision for white-collar defendants as well."

The government then urged the district court to accept the parties' joint recommendation, and sentence Rachuy to 60 months' imprisonment. The defense attorney reiterated the parties' recommendation, but the district court judge remarked, "I'm having substantial trouble arriving at 60 months given your client's behavior here … . My problem is, I'm looking at 40 years of this same behavior. I'm just astounded by this criminal record."

Ultimately, the district court concluded that Criminal History Category VI significantly underrepresented the seriousness of his criminal history, and rejected the parties' recommendation. Instead of sentencing Rachuy based on the parties' joint recommendation, the court sentenced him to 90 months' imprisonment based on its determination that he "is the epitome of a career offender" and that "[his crime is] just the latest in a string of fraudulent schemes spanning his entire adult life." The court also stated that, "if federal law and the guidelines recognize[d] [the] status [of] white-collar fraud, [Rachuy] could well be Exhibit A." Even though the court felt that 120 months' imprisonment was justified given Rachuy's conduct, the court settled on 90 months based on "the requests and the input of counsel." Rachuy now appeals.

## II. ANALYSIS

### A.  The Prosecution Did Not Breach the Plea Agreement

Rachuy maintains that the government materially breached the plea agreement in three ways, namely by: (1) inducing the district court to impose a sentence above the recommended 60 months by highlighting Rachuy's criminal history; (2) failing to recommend the agreed-upon loss amount at sentencing; and (3) opposing Rachuy's pro se motion for return of his property. Because Rachuy did not raise the first two issues before the district court at sentencing, we review for plain error. *United States v. Winters*, 695 F.3d 686, 689 (7th Cir. 2012). "Under the plain error standard, we will reverse the district court's sentencing determination only when we find: (1) an error or defect; (2) that is clear or obvious; (3) affecting the defendant's substantial rights; (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings." *United States v. Goodwin*, 717 F.3d 511, 518 (7th Cir. 2013) (internal quotations omitted). The parties dispute whether Rachuy raised the third purported breach below, but we do not need to decide the matter because Rachuy loses even under the most generous standard.

This court analyzes plea agreements using ordinary contract principles. *United States v. Schilling*, 142 F.3d 388, 394 (7th Cir. 1998). When the terms of the agreement are unambiguous, we apply the plain meaning of those terms. *United States v. O'Doherty*, 643 F.3d 209, 217 (7th Cir. 2011). To succeed on a claim, the defendant must show a material breach; a minor breach will not warrant resentencing or withdrawal of a guilty plea. *United States v. Diaz-Jimenez*, 622 F.3d 692, 694 (7th Cir. 2010).

Rachuy contends that the government broke its promise to recommend a sentence of 60 months' imprisonment at sentencing by paying "lip service" to the joint recommendation, while simultaneously undermining it by citing his lengthy criminal history. A prosecutor may breach the plea agreement by making a sentencing recommendation pursuant to the agreement, and then attempting to augment the ultimate sentence by referencing aggravating circumstances of the defendant's case. *See United States v. Salazar*, 453 F.3d 911, 914 (7th Cir. 2006). That is not what occurred here.

During the sentencing hearing, the government unquestionably mentioned Rachuy's lengthy criminal history, and even went so far as to say that "Rachuy's a perfect example of why perhaps there should be a career offender provision for white-collar defendants as well." From the sentencing transcript, it appears that the district court relied on the government's representations in imposing a higher-than-recommended term of imprisonment—the court even parroted the "career offender" characterization used by the government.

However, simply because the government referenced Rachuy's criminal history does not mean that the government breached its agreement with him. Rachuy's Guidelines range was 37 to 46 months, but the government and Rachuy's joint recommendation of 60 months was an upward departure that the government had to justify. The primary means for the government to justify the upward departure was to reference Rachuy's criminal history. Moreover, the government honored its obligation in that it never advocated for a higher sentence. Instead, it urged the court to impose a 60-month sentence. *See Salazar*, 453 F.3d at 914–15 (finding no substan-

tial breach of plea agreement when the government made necessary recommendation and "did not request a higher sentence or remind the judge that he need not abide by the agreement"). The government, on numerous occasions, recommended that Rachuy receive the agreed-upon 60-month sentence. Therefore, the government's conduct did not constitute a breach of the plea agreement.

In his second breach-related claim, Rachuy contends that the government failed to recommend that his loss amount be based solely on the checks used to purchase the vehicles charged in the superseding indictment, but his claim rests on a mischaracterization of the plea agreement. The government promised to recommend a loss amount "based only on the checks returned on the four bank accounts involved in the purchase of the vehicles charged in the superseding indictment." So, the unambiguous terms of this clause do not mandate that the loss calculation be based only on the four checks upon which Rachuy's criminal charges were based. Instead, the government was authorized to include any relevant bad checks from the *accounts* that Rachuy used to steal cars. As a result, both the checks that Rachuy issued to steal the cars charged in the indictment as well as any other checks he issued from those same accounts would be relevant conduct for sentencing purposes. The government's loss calculation was consistent with the terms of the plea agreement, and because Rachuy cannot show a breach of this provision, he cannot prevail on plain error review.

In his third breach-related claim, Rachuy contends that the government breached the plea agreement by opposing his pro se Federal Rule of Criminal Procedure 41(g) motion for the return of seized property. Rachuy argues that de no-

vo review is appropriate because, before filing his motion for the return of his property with the district court, he made it clear in his pro se motion and in several letters to the district court that he would hold the government to its promise not to oppose the motion. This, he alleges, preserved the argument for appellate review because the district court was alerted that any government opposition would breach the plea agreement. As support, he points to a First Circuit case, *United States v. Gonczy*, which states that an "objection is sufficiently raised as long as it brings the purported breach of the plea agreement to the district court's attention." 357 F.3d 50, 52 (1st Cir. 2004). The government, on the other hand, argues that plain error review is the appropriate standard because Rachuy did not formally object at the district court level.

We do not need to decide which standard applies because Rachuy loses under either standard. In the plea agreement between the parties, the United States agreed not to oppose Rachuy's request for the return of his property that was held by state or local authorities. On December 19, 2011, Rachuy filed a pro se motion in federal court for the return of evidence seized by state and local authorities. In response, the government filed a motion asserting that there was no basis for making the claim in federal court because the property was in the custody of the state authorities and that the proper forum for his request was in state court. After considering the government's response, the district court denied Rachuy's motion, partly for jurisdictional reasons.

We conclude that the government's response to Rachuy's motion did not constitute a breach because the government did not "oppose" Rachuy's motion in a legal sense. Rather,

the government simply alerted the court to the limits of its jurisdiction, which this court has said that all parties should do. *See Hart v. Terminex Int'l*, 336 F.3d 541, 544 (7th Cir. 2003) ("We … emphasize that this waste of federal judicial re-sources and delay of justice was avoidable and reiterate our admonitions to future litigants to meticulously review the limits of federal jurisdiction"). Rachuy's request was not made in the proper forum because he asked a federal district court to order state authorities to turn over his property they seized in connection with a state prosecution against him. This is power that a federal district court does not have the authority to exercise. *See generally Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authori-ty over state judicial proceedings.").

Rachuy's claim would have merit if he alleged that the government opposed the motions he made in state court. However, the government did not file a motion in opposi-tion to the motion Rachuy filed in state court. When Rachuy made appropriate requests for return of his property in state court, the government lived up to its end of the bargain and did not oppose those requests. Because the government did not oppose Rachuy's motion, but simply alerted the federal court to the boundaries of its jurisdiction (something this court encourages parties to do), the government did not breach its agreement with Rachuy.

## B. No Abuse of Discretion in Denying Rachuy's Re-quest for an Evidentiary Hearing

Rachuy contends that the district court abused its discre-tion because it failed to hold an evidentiary hearing on his request for return of his property. We review a district court's denial of a Rule 41(g) motion for return of seized

property for abuse of discretion. *Stevens v. United States*, 530 F.3d 502, 506 (7th Cir. 2008). A court abuses its discretion when it makes an error of law or when it makes a clearly erroneous finding of fact. *United States v. Freeman*, 650 F.3d 673, 678–79 (7th Cir. 2011).

As we previously mentioned, Rachuy's motion was properly dismissed on jurisdictional grounds. When a court finds that it lacks jurisdiction, it is improper for it to proceed to the merits of the issue. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation marks omitted). The district court did not abuse its discretion by denying the motion without holding an evidentiary hearing because there was no need to accept evidence.

## C. No Plain Error Regarding Credit for Time Served

Rachuy asserts that he should have been sentenced under U.S.S.G. § 5G1.3(b) rather than under § 5G1.3(c), and given credit for a sentence he received for a related fraud conviction in Minnesota. We do not agree. This court's review of sentencing decisions proceeds in two steps. *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). First, we ensure that the district court did not commit any "significant procedural error," including failing to calculate, or improperly calculating, the applicable Guidelines range, treating the Guidelines as mandatory, or failing to consider the § 3553(a) factors. *Id*. Once convinced that the sentencing judge followed correct procedure, we then consider the reasonableness of the sentence. *Id*. In conducting this review, we will generally set

aside factual findings underlying the sentence only if they are clearly erroneous, and review questions of law de novo. *United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005). However, because Rachuy did not raise this issue below, we review the district court's decision for plain error. *United States v. Martin*, 692 F.3d 760, 763 (7th Cir. 2012).

Because Rachuy's Minnesota conviction was not the basis for an offense-level increase, the option of being sentenced under § 5G1.3(b) was not available to him. Under § 5G1.3(c), a sentencing judge has the discretion to impose a sentence that runs concurrently with a prior undischarged term of imprisonment, which the court did here by ordering Rachuy's federal sentence to run concurrently with his Minnesota sentence. Rachuy would prefer to be sentenced under § 5G1.3(b) because when that provision applies, the court may adjust the sentence "for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." § 5G1.3(b)(1). A sentencing judge looks to § 5G1.3(b) only if that "term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction … and was the basis for an increase in the offense level for the instant offense." *United States v. Broadnax*, 536 F.3d 695, 700 (7th Cir. 2008). Before a defendant can benefit from this section, he must show that both elements of § 5G1.3(b) are met. *Id*. at 701.

Rachuy is not eligible to be sentenced under § 5G1.3(b) because he does not meet both elements. Rachuy satisfies the first condition set out in § 5G1.3(b) because his Minnesota conviction was the relevant conduct in the instant offense.

But, he fails to meet the second condition of § 5G1.3(b) because his Minnesota conviction was not the basis for an offense-level increase. In his plea agreement, Rachuy agreed that the government would recommend that the court calculate loss" based only on the checks returned on the four bank accounts involved in the purchase of the vehicles charged in the superseding indictment." The loss amount associated with these four accounts for both state and federal cases totaled $136,398.63. The government subtracted $14,279.32—the amount associated with his Minnesota state conviction—from $136,398.63, to arrive at a loss amount of $122,119.71. This $122,119.71 figure was the loss amount only associated with the federal case and on which Rachuy's offense level was based.

Therefore, we conclude that the district court correctly calculated Rachuy's Guidelines range. Pursuant to U.S.S.G. § 2B1.1(b)(1)(F), any monetary losses between $120,000 and $199,999 result in a 10-level increase in offense level. Even without the $14,279.32 loss from the Minnesota conviction, Rachuy's total loss amount was still above the $120,000 threshold necessary to trigger the 10-level increase. Ultimately, even though the state conviction was included as relevant conduct, Rachuy received no criminal history points for that offense, and the loss associated with it was not used to calculate his offense level. Given that the state conviction was not "the basis for an increase in the offense level" for Rachuy's federal transporting stolen vehicle conviction, he was not eligible to be sentenced under § 5G1.3(b) and the court did not err by sentencing him under § 5G1.3(c).

## III. CONCLUSION

The judgment of the district court is AFFIRMED.