In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1978

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MAURICE DAVIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:11-cr-00063 — **Charles N. Clevert, Jr.**, *Judge.*

ARGUED MAY 29, 2014 — DECIDED AUGUST 1, 2014

Before BAUER, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Maurice Davis pled guilty to conspiracy to distribute crack cocaine as part of a written plea agreement with prosecutors. In return, the government agreed to provide various sentencing recommendations to the district court. On appeal, Davis claims that the statements made by the government ran counter to the agreed-to recommendations. Davis maintains that this alleged breach allows him to withdraw his guilty plea altogether. However, since Davis received every benefit promised

to him in the plea agreement, we see no reason to rescind it. We affirm the decision of the district court.

## I. BACKGROUND

On March 15, 2011, a grand jury indicted Davis, along with five others, for one count of conspiracy to distribute 280 or more grams of crack cocaine between 2008 and 2010, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Later that year, the United States Attorney charged Davis in a one-count information for conspiracy to distribute 28 or more grams of crack cocaine between 2008 and 2010, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. That same day, Davis and the government entered into a written agreement, which stated that Davis would plead guilty to the charge set forth in the information and waive prosecution by indictment.

In turn, the government would dismiss the indictment and provide several sentencing recommendations. The government would recommend that: (1) "the relevant conduct attributable to the defendant is at least 196 grams but less than 280 grams of a mixture and substance containing cocaine base in the form of crack cocaine, a Schedule II controlled substance"; (2) an applicable base offense level of 30; (3) a two-level decrease for acceptance of responsibility along with an additional one-level decrease, if available, for Davis's timely notice of his intention to plead guilty; (4) a sentencing recommendation at the "low end of the applicable sentencing guideline range, as determined by the court." The Presentence Report ("PSR"), incorporating the government's recommendations, assigned a total offense level of 27 (a base level of 30 minus a three-level decrease) resulting in a sentencing range of 130–162 months.

Davis's efforts to withdraw his guilty plea began in early 2012, but was complicated by various changes in his representation. In February, his initial counsel sought to withdraw and was replaced. In August, Davis's new counsel also moved to withdraw from representation but was denied by the district court. In September, Davis and his new counsel filed separate motions to withdraw his guilty plea. The court then allowed Davis, upon his own motion, to proceed pro se; his attorney then served as his standby counsel. In an evidentiary hearing, Davis contended that he was not fully informed when he pled guilty and that there was enough evidence to prove his innocence. The district court granted Davis's request to proceed pro se but denied all motions to withdraw his guilty plea. Sentencing commenced that same day.

At sentencing, Davis continued to deny all offense conduct attributed to him by the PSR and disputed its proposed sentencing guideline range. In response, prosecutors alleged that Davis's objection ran afoul of what he stated in his earlier proffer agreement. And according to the plea agreement, "[i]f the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter."

The court accepted the request of the prosecution to compare Davis's statements made in his objection to those in his proffer agreement. The prosecutor noted that Davis had admitted his guilt in the proffer statement and his current objection contradicted that admission. The prosecutor further asserted that the PSR was incorrect and that the drug weight attributable to Davis should be 2.8 kilograms—roughly ten times what was stipulated in the

plea agreement—supporting a new base offense level of 36 and a new sentencing range of 324–405 months. Nevertheless, the government stood by its agreement to attribute 196–280 grams to Davis as relevant conduct; accordingly, the government maintained that 252 grams of crack cocaine was a conservative and appropriate estimate given the government's report. Davis objected to the 252-gram figure and, in response, the government alleged that he had breached the plea agreement and sought to pursue a higher sentence. The district court ordered the government to provide further documents pertaining to drug weight and opted to reconvene the sentencing hearings at a later date.

The government filed a revised version of the offense, which cited six unnamed sources of information—along with Davis's proffer statement—suggesting that Davis conspired to distribute up to 2.148 kilograms of crack cocaine. Sentencing then resumed on December 5, 2012. Over the following weeks, Davis filed responses attacking the credibility of the government witnesses' testimony.

The last day of sentencing was no less chaotic than the first. In addition to further dispute as to the applicability of witness testimony and another unsuccessful pro se motion to vacate the plea, the government admitted an internal calculation error that, if corrected, would have placed the relevant conduct attributable to Davis at 512 grams of crack cocaine. In order to move the case forward, the government agreed to set its recommendations in accordance with the original plea agreement—a weight of 196–280 grams, a guideline sentence range of 130–162 months, and a 120-month sentence.

The court's findings and sentence corresponded with these recommendations.

## II. ANALYSIS

The sole issue before us is whether the government breached its plea agreement with Davis. We must first determine whether or not this issue was forfeited in the district court for failure to object, which would limit our review to plain error. Since we find that Davis adequately objected and therefore preserved this issue on appeal, we review the plea agreement and any alleged breach therein under general contract principles. *United States v. Diaz-Jimenez*, 622 F.3d 692, 694 (7th Cir. 2010). In conducting our review, "we interpret a plea agreement based on the parties' reasonable expectations and construe ambiguities against the government as the drafter." *United States v. Munoz*, 718 F.3d 726, 729 (7th Cir. 2013). In making this determination, we "must examine whether there has been a substantial breach of the plea agreement, in light of the parties' reasonable expectations upon entering the agreement." *United States v. Schilling*, 142 F.3d 388, 395 (7th Cir. 1998) (internal quotations and citations omitted). If the government does break its promise, the maximum relief is allowing the defendant to withdraw his plea and the minimum remedy is specific performance and resentencing by a different judge. *Diaz-Jimenez*, 622 F.3d at 694.

Davis alleges three separate instances on which the government violated the plea agreement. First, the government alleged that Davis was responsible for 2.8 kilograms of crack cocaine and the actual offense level ought to have been 36, as opposed to what was enumerated in the plea agreement (a base sentencing level of 30 and less than 280 grams of cocaine). This in turn led to the

government's filing of a revised version of the offense that suggested Davis was responsible for conspiring to distribute a higher amount of narcotics than agreed to in the plea agreement. Davis makes this argument notwithstanding the fact that the government accepted the quantity set out in the plea agreement and honored its sentence recommendation.

There was a great deal of confusion at Davis's sentencing hearing, due in large part to his insistence that the drug weight and his role in the offense enumerated in the PSR were incorrect. The recommended quantity and offense level contained in the plea agreement represented a *negotiated* figure based on Davis's cooperation and acceptance of responsibility. Yet Davis insisted that the sum of the case against him was "tainted" evidence and that the "government ha[d] no sufficient evidence to prove the guideline level." The government, believing that Davis had breached his earlier proffer statement, sought to introduce the statement to rebut this assertion. This in turn led to the introduction of a higher quantity of drugs attributable to him.

But the government, throughout the hearing, honored its commitment to recommend a quantity lower than 280 grams. *Cf. Diaz-Jimenez*, 622 F.3d at 696 (prosecutor's statement that the *least* amount is that which was bargained for in the plea agreement but that "a larger sentence could be appropriate" is "a serious breach"). And Davis received the full benefit of the plea agreement, despite the government's initial under-calculation of the drug quantity. *See United States v. Feichtinger*, 105 F.3d 1188, 1191 (7th Cir. 1997) ("If the government, in effect, does a little less than it promised, but actually does something which may be more likely to yield good results for a defendant, then it has not breached its end of a plea agreement."). The government,

while acknowledging that it had under-calculated the quantity of drugs attributable to Davis, nonetheless repeatedly stood by its position that he be sentenced in accordance with the plea agreement. *See United States v. Salazar*, 453 F.3d 911, 914–15 (7th Cir. 2006) (no substantial breach when the government recommended the amount in the plea agreement despite referring to the defendant as a "cold-blooded killer" at sentencing); *United States v. Rachuy*, 743 F.3d 205, 209 (7th Cir. 2014) ("The government honored its obligation in that it never advocated for a higher sentence" and "on numerous occasions, recommended that Rachuy receive the agreed-upon … sentence."). Moreover, Davis's proposed remedy, that the plea agreement be rescinded, would possibly subject him to a greater sentence. The fact remains that, despite all of the confusion regarding the drug quantity following Davis's objections, the government recommended and Davis received exactly what was written in the plea agreement. Accordingly, we do not find a breach warranting rescission of the agreement.

## III. CONCLUSION

Davis has failed to demonstrate a substantial violation of the plea agreement. He received the full benefit of the plea agreement and the government adhered to the terms therein. Accordingly, we AFFIRM the decision of the district court.