In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2092

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ELIA V. ORLANDO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin
No. 13-CR-208 — **Rudolph T. Randa**, *Judge.*

ARGUED JANUARY 21, 2016 — DECIDED MAY 25, 2016

Before POSNER, EASTERBROOK, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Defendant Elia Orlando was indicted on charges of producing and possessing child pornography in October 2013. Orlando agreed to plead guilty to multiple counts of producing child pornography in April 2014 in exchange for the government's sentencing recommendation amongst other considerations. That decision set in motion the complex process of sentencing Orlando, a process that has already involved two sentencings and one appeal.

Orlando and the government now seek a third sentencing for him. According to Orlando and the government, the district court erred in interpreting our remand order after the first appeal and failed to conduct a full resentencing of Orlando. On remand, the district court only addressed Orlando's term and conditions of supervised release. Orlando also argues that the district court committed procedural error in its resentencing and that the government breached its plea agreement by failing to recommend a term of imprisonment of 35 years.

Finding that the district court did in fact err in interpreting our remand order, we vacate Orlando's sentence and remand for a full resentencing. We do not, however, find that the government breached its plea agreement and therefore decline to reassign Orlando's case to a different judge.

## I.   BACKGROUND

The facts and procedural posture of this case, like many of the appeals involving the imposition of terms and conditions of supervised release, are complicated. We start with the offense that brought Orlando into federal custody before recounting his sentencing, first appeal, and resentencing.

### A. Indictment, Guilty Plea, and First Sentencing

On August 4, 2013, Milwaukee Police officers retrieved a cell phone belonging to Orlando. The phone had been discovered three days earlier by a woman in a suburban Milwaukee gas station. She picked up the phone after a man left it on the checkout counter. She attempted to return the phone to the man but was unsuccessful. The woman later went through the phone on August 4 in an effort to locate a number for its owner. In the process, she discovered images

she believed to be child pornography and reported her discovery to Milwaukee police.

The officers observed the images and then determined the phone was owned by Orlando. That same day, police went to Orlando's home and arrested him. When first questioned, Orlando invoked his right to counsel. Later, however, he changed his mind and decided to talk with police.

Orlando admitted to owning the cell phone and possessing "child porn" images—both on his phone and his laptop computer. Orlando allowed police to retrieve a computer from his home and consented to a search of that computer and his phone. Police later recovered child pornography images produced by Orlando during a forensic examination of his cell phone.

On October 22, 2013, a federal grand jury returned an indictment against Orlando in which it charged him with two counts of production of child pornography in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Just over a month later, a superseding indictment was returned, which included the same counts as the earlier indictment and added four more counts for production of child pornography.

The government and Orlando then entered into a plea agreement. The agreement called for Orlando to plead guilty to four counts of production of child pornography. In exchange, the government would drop the remaining three counts of the superseding indictment and, according to paragraph 22 of the agreement, the government would "recommend a term of imprisonment of thirty-five years, followed by a term of lifetime supervision."

Orlando fulfilled his end of the bargain on April 23, 2014, and entered a plea of guilty to four counts of production of child pornography. The government did the same at Orlando's August 18, 2014, sentencing. There, the government moved to drop the three remaining counts from the superseding indictment and stated the following: "the Government is making a recommendation of a term of imprisonment of 35 years, followed by lifetime supervision."

The district court, however, decided to impose a sentence of 40 years in prison followed by a life term of supervised release, which included mandatory and discretionary conditions of supervision. In imposing the conditions of supervised release, the district court did not evaluate or discuss the sentencing factors from 18 U.S.C. § 3583(d), including determining whether each discretionary condition was "reasonably related" to the factors in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D). With respect to the length of the supervised release, the district court stated: "I'm going to place you on supervised release for life, which I must do." The district court also did not inform Orlando of the "Standard Conditions of Supervision" that were imposed in the judgment. [1]

---

[1] The phrase "standard conditions" can have two meanings in a sentencing context. The sentencing guidelines provide for fifteen "standard" conditions that are "recommended for supervised release." U.S.S.G. § 5D1.3(c). The administrative office for the U.S. Courts provides thirteen "Standard Conditions of Supervision" in form number AO 245B, "Judgment in a Criminal Case." The thirteen conditions are substantially the same as the first thirteen conditions provided in U.S.S.G. § 5D1.3(c). In this case, the district court imposed the thirteen "Standard Conditions of Supervision" from Form AO 245B. It should be noted that although these

(continued…)

*B. First Appeal*

Orlando appealed and challenged his term of supervised release and the conditions of that supervised release. Instead of filing a response, the government filed a joint motion with Orlando on February 24, 2015, in which both sought an order from this court "summarily revers[ing] the judgment of the district court and to remand the case for resentencing, consistent with" *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015). According to the motion, the district court did not make the required findings before imposing supervised release conditions, failed to state the "standard conditions of supervised release" at sentencing, and mistakenly believed the imposition of lifetime supervision was required.

We granted the joint motion, vacated Orlando's sentence, and remanded to the district court "for resentencing in light of" *Thompson* on March 5, 2015.

*C. Resentencing*

On May 13, 2015, Orlando appeared via video conference before the district court for a resentencing hearing. At the hearing, the district court stated the following:

> The case is remanded to this Court pursuant to a
> Seventh Circuit Court order which asks the Court

---

(…continued)

conditions are called "standard," the imposition of these conditions by a district court is not mandatory like those required by 18 U.S.C. § 3583(d). Therefore, the imposition of these "standard" conditions is discretionary because the court must still make adequate findings before imposing them. *See United States v. Kappes*, 782 F.3d 828, 848 (7th Cir. 2015); *United States v. Thompson*, 777 F.3d 368, 376–78 (7th Cir. 2015).

> to reimpose—or revisit certain conditions of super-
> vised release, and the Court's failure to formally
> calculate the guidelines range. The Court's treat-
> ment of the guidelines recommended a life term of
> supervised release as mandatory. So that's what
> we're here to discuss.

(Orlando Sent. Tr. 2, May 13, 2015.) Neither Orlando nor the government disputed the district court's characterization of the purpose for sentencing. Instead, the government and Orlando presented their agreement to ask the court for a delay in imposing discretionary conditions of supervised release, until Orlando was "closer to the release date from his term of imprisonment." *Id.* at 3. The district court obliged, though it went further than the government and Orlando requested. The district court delayed the imposition of any conditions of supervised release—mandatory or discretionary—as well as the term of supervised release until "the Defendant's re-leased from custody." *Id.* at 4.

After resolving the issues related to supervised release, the district court said "[t]hat satisfies, I believe, the remand order from the Seventh Circuit" and then asked if there were any other matters to discuss. Orlando, through his attorney, responded by asking if the district court would consider im-posing a different term of imprisonment. *Id.* His attorney, however, immediately followed that request with the follow-ing statement:

> I told him that it looked like the remand order may
> have precluded that, but it is a re-sentencing. So I
> did discuss with him, you know, the idea that I re-
> ally had no new factors or anything that bear upon
> the sentence that the Court passed. That sentence
> was not specifically vacated, but I wanted the Court

> to be aware, and Mr. Orlando to be aware, that that
> was an issue he spoke to me about.

*Id.* Orlando's attorney went on to state that if the district court were to address Orlando's term of imprisonment, he would ask the district court to lower his sentence because Orlando had "been doing well" and the government had asked for a sentence of 35 years' imprisonment.

The district court refused and stated that the remand from the Seventh Circuit was limited to the imposition of term and conditions of supervised release. There was no direction, according to the district court, "to revisit the time that I imposed on your sentence." *Id.* at 5. Neither the government nor Orlando objected to the district court's characterization of the remand order.

## II.  ANALYSIS

On appeal, Orlando advances three arguments: (1) the district court erred when it failed to conduct a full resentencing after we remanded in light of *Thompson*; (2) the district court committed procedural error when it failed to consider Orlando's post-incarceration rehabilitation or the sentencing factors in imposing its sentence; and (3) the government breached its plea agreement by not recommending a sentence of 35 years at Orlando's second resentencing. We address each argument in turn.

### A. Full Resentencing

The government agrees with Orlando that we should vacate his current sentence and order a full resentencing. Of course, we are not free to remand for resentencing based solely on the government's concession that an error occurred in the district court. *Orloff v. Willoughby*, 345 U.S. 83, 87

(1953) ("This Court, of course, is not bound to accept the Government's concession that the courts below erred on a question of law."); *United States v. Anderson*, 547 F.3d 831, 833 (7th Cir. 2008) ("The government has made a limited confession of error, which of course is not binding on us."). We must still determine whether a remand for a full resentencing is warranted.

Our review tells us a full resentencing is appropriate in this instance. When we first vacated Orlando's sentence in March 2015, we remanded to the district court for resentencing in light of *Thompson*. In *Thompson*, we consolidated four appeals relating to supervised release that were heard on the same day. 777 F.3d at 372. Finding error with the procedures used by the district courts in all four cases in imposing conditions and or terms of supervised release, we vacated and remanded all four cases for a full resentencing. *Id.* at 382. In so doing, we stated the following:

> Although we find no reversible error in the prison sentences treated in isolation from the conditions of supervised release, *we vacate the entire sentences* because reconsideration of those conditions may conceivably induce one or more of the judges to alter the prison sentence that he imposed.

*Id.* (emphasis added).

When we vacated and remanded in light of *Thompson*, we vacated Orlando's *entire* sentence, including his term of imprisonment, so that the district court would consider Orlando's supervised release term and conditions along with his

term of imprisonment.[2] We do the same now. Such reconsideration may lead the district court to impose a shorter or longer term of imprisonment. That is the risk Orlando takes with this appeal.

*B. Consideration of Orlando's Post-Sentencing Rehabilitation and Other Sentencing Factors*

We need not dwell on Orlando's second argument concerning the procedural errors committed during his May 2015 resentencing, as we have already determined that Orlando is entitled to a full resentencing. The district court misinterpreted our remand order. We presume this misinterpretation is why it did not consider the § 3553 factors and why it may have not discussed the defendant's post-sentencing rehabilitation, which the Supreme Court held district courts *may* do in *Pepper v. United States*, 562 U.S. 476, 490 (2011).

We pause here though to make two observations about the manner in which the term and conditions of supervised release were addressed during Orlando's May 2015 resentencing.

First, as we noted at oral argument, the district court did not impose any term of supervised release, which makes Orlando's sentence defective. 18 U.S.C. § 3583(k) requires that the district court impose a term of supervised release ranging from 5 years to life on Orlando. Therefore, some term (at

---

[2] It should be noted that neither party directed the district court to this passage from *Thompson* during Orlando's resentencing, after the district court erred in interpreting our remand order. Had the government and or Orlando done so, we may not have had to address Orlando's concerns here again.

least five years) is required. The district court believed it could delay the imposition of the term until later, but the statute allowing revision of the conditions of supervised release does not permit the district court to add a term of supervised release to a sentence entirely lacking it. And, because Orlando had to receive a term of supervised release, the district court also needed to, at the very least, impose the conditions of supervised release required by § 3583(d). That did not happen at Orlando's resentencing. We would anticipate the government would have called these issues to the court's attention at resentencing. It did not. We expect the result to be different on remand.

Second, during Orlando's resentencing, the government and Orlando requested that the district court refrain from imposing any discretionary conditions of supervised release until closer to Orlando's release date. We understand there are competing views on this wait-and-see approach taken by district courts within this circuit. This approach has merit, especially in situations where the defendant faces a long term of imprisonment. Such an approach may allow a district court to impose discretionary conditions that are more tailored to a defendant's particular needs should his or her circumstances change during the term of imprisonment. And, we have suggested that this approach may be permissible under § 3583(e)(2). *See United States v. Neal*, 810 F.3d 512, 516–17 (7th Cir. 2016) (recognizing that a district court may modify or clarify conditions of supervised release long after imposing supervision)

The approach does, however, present drawbacks. Pushing off imposition of discretionary conditions until closer to a defendant's release date means that in many circumstanc-

es, the district court judge who imposed the original sentence will no longer be on the bench. The new district court judge then will be deprived of observing and interacting with the defendant throughout the defendant's admission of guilt or the defendant's trial, as well as the defendant's initial sentencing phase. And, even if the same district court judge is there to consider the imposition of discretionary conditions at the later date, memories fade, and the court may lose the benefit of being fully immersed in the case.

Adopting this approach also most likely means the prosecutor and defense attorney who handled the defendant's case and initial sentencing will not be around when the district court imposes the discretionary conditions of supervised release. The defendant's new attorney may have limited familiarity with the case and defendant's situation prior to the district court imposing a critical piece of the defendant's sentence.

Finally, it could create a possible scenario where the defendant would not be able to get before the district court prior to his or her release for the imposition of the discretionary conditions. If this situation were to occur, then several of the discretionary conditions—referred to earlier as "standard"—that allow for an effective system of supervision would not be in place when the defendant leaves custody. This approach then breeds inherent inefficiencies, opportunities for systemic failure, and may even prejudice the defendant. That outcome is not ideal.

Rather than allow for this outcome, the more prudent path would be to consider and impose mandatory and discretionary conditions at the defendant's original sentencing. Then, as we said in *United States v. Siegel*, the defendant

should on the eve of his or her release from prison "attend a brief hearing before the sentencing judge (or his successor) in order to be reminded of the conditions of supervised release. That would also be a proper occasion for the judge to consider whether to modify one or more of the conditions in light of any changed circumstances brought about by the defendant's experiences in prison." 753 F.3d 705, 717 (7th Cir. 2014). As discussed earlier, the district court has the power to modify those conditions under § 3583(e)(2).

*C. Plea Agreement*

Orlando's final argument is that the government breached the plea agreement by failing to recommend a 35 year term of imprisonment. As a consequence of this purported breach, Orlando seeks a full resentencing hearing before a different judge. *See Santobello v. New York*, 404 U.S. 257, 263 (1971) (discussing the remedies for breach of a plea agreement, which include specific performance and resentencing by a different judge); *United States v. Diaz-Jimenez*, 622 F.3d 692, 696–97 (7th Cir. 2010).[3] Finding no breach here though, we decline to order that Orlando's resentencing hearing be handled by a different judge.

---

[3] Relying on *Diaz-Jimenez*, Orlando also seeks an order from us requiring the U.S. Attorney's Office to assign a different prosecutor for Orlando's resentencing. Orlando misreads *Diaz-Jimenez*. We did not "order" the U.S. Attorney's office involved in that case to change the prosecutor who handled the sentencing. Instead, we stated: "[w]e *expect* that a different prosecutor from the U.S. Attorney's office will appear before that judge, apologize for the clumsy mistake of the previous prosecutor, and recommend an 18-month sentence without any ifs, ands, or buts." 622 F.3d at 697 (emphasis added). That statement does not amount to an order.

When a party objects to the breach of a plea agreement at sentencing and no factual disputes exist, we review whether the government breached the agreement *de novo. United States v. Malone*, 815 F.3d 367, 370 (7th Cir. 2016). We review for plain error, however, where, as here, the defendant does not object to the government's breach of the plea agreement before the district court. *See United States v. Navarro*, 817 F.3d 494, 499 (7th Cir. 2016). Under those circumstances, the defendant will only prevail if "there was [an] error; the error was plain or obvious; the error affected his substantial rights; and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Artley*, 489 F.3d 813, 824 (7th Cir. 2007).

In determining whether there was an error here, we must analyze whether there was a breach of the plea agreement in the first instance. To do so, we apply ordinary principles of contract law in interpreting the agreement, "with an eye to the special public-interest concerns that arise in this context." *Malone*, 815 F.3d at 370 (internal quotation marks omitted). If ambiguities exist in the agreement's language, we look to "the parties' reasonable expectations and construe ambiguities against the government as the drafter." *Id.* But we will not ignore the plain, unambiguous language of the agreement and create ambiguities where none exist. *Id.* To qualify for a remedy though, the breach must also be material and not minor. *Diaz-Jimenez*, 622 F.3d at 694. That is because a breach that "causes no harm" entitles the non-breaching party to "nominal damages, which means, as a practical matter, no relief." *Id.*

The clause at issue here states in relevant part that "[t]he government will recommend a term of imprisonment of thir-

ty five years, followed by a term of lifetime supervision."
(Plea Agreement at ¶22.) This unambiguous term means that
for the government to perform this obligation under the
agreement, it must recommend to the sentencing judge a
term of imprisonment of 35 years for Orlando. It cannot be
stated any plainer. To perform this obligation though, the
government needed the district court sentencing Orlando to
give it the opportunity to do so. No such opportunity was
provided, as the district court refused to entertain any dis-
cussion about Orlando's term of imprisonment at his resen-
tencing. When the government had an opportunity to rec-
ommend a term of imprisonment at Orlando's original sen-
tencing, it performed as required by the agreement.

Orlando argues the district court's error in interpreting
our remand order does not excuse the government's failure
to recommend a 35-year term of imprisonment. According to
Orlando, the government could not "have misunderstood
the scope of the remand," as it recognized in the government
and Orlando's joint motion for resentencing that "*Thompson*
required a full resentencing." (Appellant Reply Br. at 3.)

To embrace this line of reasoning would require us to
add a term to the plea agreement, which we refuse to do. No
term in the plea agreement required the government to ar-
gue to the district court that our remand required a full re-
sentencing. Rather, the government was under a contractual
obligation to recommend a 35 year term of imprisonment—if
the district court conducted a full resentencing. The condi-
tion triggering the government's obligation to perform did
not happen during the May 2015 resentencing.

Further undermining Orlando's position here is his own
attorney's belief that our remand order did not allow for the

district court to reconsider Orlando's prison sentence. Orlando's attorney did not object to the district court's position, and in fact, suggested that he believed the remand order "precluded" revisiting his client's term of imprisonment during the resentencing.

There is insufficient evidence here to find even a minor breach of the plea agreement, let alone a material one that warrants further evaluation under the plain-error standard. While we did not find breach here, we expect that the prosecutor who handles the resentencing hearing on remand will fulfill the promises made by the government in the plea agreement, including its promise to recommend 35 years' imprisonment. *See United States v. Cahill*, 920 F.2d 421, 425 (7th Cir. 1990) ("[a]ny agreement made by the government must be scrupulously performed and kept." (alteration in original and quotation marks omitted)).

### III. CONCLUSION

For the foregoing reasons, Orlando's sentence is VACATED, and Orlando's case is REMANDED for a full resentencing.