In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2402

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CEDRIC J. MORRIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 13-CR-250 — **Rudolph T. Randa**, *Judge.*

ARGUED FEBRUARY 18, 2016 — DECIDED SEPTEMBER 9, 2016

Before WOOD, *Chief Judge*, KANNE and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge.* In 2015 Cedric Morris pleaded guilty to two counts of distributing heroin. The plea agreement called for the government to make several specific sentencing recommendations: what quantity of drugs should count as relevant conduct, what Morris's base offense level should be, and whether Morris was entitled to an acceptance-of-responsibility reduction. The agreement also required the

government "to recommend a sentence within the sentencing guidelines range as determined by the [district court]."

At sentencing the judge determined that Morris's Guidelines range was 70–87 months. In making that determination, the judge applied a two-level enhancement for possession of a dangerous weapon in connection with a drug offense. *See* U.S.S.G. § 2D1.1(b)(1). Morris objected, and although the plea agreement made no mention of a dangerous-weapon enhancement, the government responded that the enhancement was appropriate because federal agents had recovered a handgun from Morris's residence. The government furthermore recommended a sentence at the high end of the Guidelines range calculated by the judge. The judge imposed an 87-month sentence. Morris now appeals, arguing that the government breached the terms of the plea agreement and that the two-level enhancement for possession of a dangerous weapon was unwarranted.

There was no breach. The plea agreement expressly states that the parties remained free to make sentencing recommendations not mentioned in the agreement, which is what the government did when it supported an enhancement for possession of a dangerous weapon. The government also clearly satisfied its obligation to recommend a sentence within the Guidelines range calculated by the district judge. Finally, the handgun that was found in Morris's residence easily justifies application of the dangerous-weapon enhancement. Accordingly, we affirm Morris's sentence.

## I. Background

Cedric Morris, a Chicago resident, was in the business of organizing regular shipments of heroin to a distributor in

Milwaukee, Wisconsin. Morris would hire female couriers to transport small, prepackaged quantities of the drug on the Amtrak train that runs between the two cities. In February 2013 Morris's distributor began cooperating with law enforcement. With the distributor's assistance, federal agents observed and recorded transactions with two of Morris's couriers. Based on those transactions, a grand jury in Milwaukee returned a four-count indictment charging Morris and the couriers with distributing heroin, 21 U.S.C. § 841(a), (b) (Counts 1 and 3), and Morris with directing others to travel between states with the intent to carry on an unlawful activity, 18 U.S.C. § 1952 (Counts 2 and 4).

On January 8, 2014, agents attempted to execute arrest warrants for Morris and Raven Hayes, one of his couriers, at the residence they shared. Hayes was at home when the agents arrived, but Morris was not. The agents searched the residence, including the basement where Hayes indicated that Morris lived. There they found a bedroom containing men's clothing and a number of personal effects bearing Morris's name, including prescription medication, parking citations, and a plane ticket. In a laundry room adjacent to the bedroom, the agents found a Smith & Wesson .32-caliber handgun next to a small amount of heroin and a variety of materials used for packaging heroin. Morris was apprehended two months later.

Morris eventually pleaded guilty pursuant to a written plea agreement to the distribution charges in Counts 1 and 3 of the indictment; in exchange the government dropped the remaining counts. The agreement stated that the parties had discussed what they believed to be the relevant provisions of the Sentencing Guidelines, and the government agreed to

make three specific sentencing recommendations. First, it would recommend that the judge attribute 400 to 700 grams of heroin to Morris as relevant conduct, resulting in a base offense level of 26. *See* U.S.S.G. § 2D1.1(a)(5), (c)(7). Second, the government would recommend an acceptance-of-responsibility reduction. *See id.* § 3E1.1. Finally, the government agreed "to recommend a sentence within the [S]entencing [G]uidelines range as determined by the [district court]."

The Presentence Investigation Report ("PSR") incorporated the parties' recommendations regarding Morris's base offense level and the acceptance-of-responsibility reduction. However, the PSR also recommended two enhancements not mentioned in the plea agreement: one for possessing a dangerous weapon in connection with a drug offense, *see* § 2D1.1(b)(1), and one for having a leadership role in the offense, *see* U.S.S.G. § 3B1.1(c). Morris objected, and the prosecutor responded that both enhancements were appropriate.

The district judge did not apply a leadership-role enhancement, but he did adopt the rest of the PSR's findings, including the dangerous-weapon enhancement. The resulting offense level was 25, which yielded a Guidelines range of 70–87 months when combined with Morris's criminal history category of III. The judge then asked the government for its sentencing recommendation. Citing the plea agreement, the prosecutor recommended a sentence "within the advisory guidelines as calculated by this [c]ourt" but noted his view that Morris's "responsibility falls closer to the higher end of that level than the lower end." The prosecutor also noted that without the dangerous-weapon enhancement, Morris's

Guidelines range would have been 57–71 months. After hearing arguments in mitigation from Morris's attorney, the judge imposed an 87-month sentence, the top of the Guidelines range.

## II. Discussion

### A. Breach of the Plea Agreement

Morris's main argument is that the government breached the plea agreement in two respects: first, by supporting enhancements that were not mentioned in the plea agreement, and second, by recommending a sentence at the high end of the range the district judge calculated. Morris argues that the government was obligated to recommend a sentence within the range that would have resulted without the enhancement for possessing a dangerous weapon: 57–71 months. He asks that we vacate his sentence and order resentencing before a different judge.

Because Morris didn't object to the government's alleged breach at sentencing, our review is for plain error. *See United States v. Orlando*, 823 F.3d 1126, 1134 (7th Cir 2016). Under this standard, Morris will prevail only if "there was [an] error; the error was plain or obvious; the error affected his substantial rights; and the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (quotation marks omitted). To determine whether an error occurred, we must first decide whether the government actually breached the plea agreement. *Id.* We interpret the parties' agreement using ordinary contract principles and resolving any ambiguities against the government. *United States v. Brown*, 779 F.3d 486, 492 (7th Cir. 2015). "We will hold the government to any explicit or implicit promises

it has made to the defendant in exchange for his guilty plea, but the government's obligations, like the defendant's, will be limited to matters on which they have actually agreed." *Id.*

The plea agreement contains three explicit promises that relate to sentencing, each of which the government satisfied. First, in paragraphs 16 and 17, the government agreed to recommend that the judge attribute 400 to 700 grams of heroin to Morris as relevant conduct, resulting in a base offense level of 26. It's undisputed that the government made that recommendation. Second, paragraph 18 required the government to recommend an acceptance-of-responsibility reduction, which it did. Finally, paragraph 22 required the government to "recommend a sentence within the [S]entencing [G]uidelines range as determined by the [district court]." The judge calculated a Guidelines range of 70–87 months, and the prosecutor recommended a sentence "at the higher end of that level."

Morris contends that Paragraph 14 of the plea agreement contains additional, implicit promises that the government did not fulfill. That provision provides in full:

> The parties acknowledge, understand, and agree that the [S]entencing [G]uidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the [S]entencing [G]uidelines. The defendant acknowledges and understands that the [S]entencing [G]uidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the

> court may impose a reasonable sentence above
> or below the [G]uideline[s] range. The parties
> further understand and agree that if the de-
> fendant has provided false, incomplete, or in-
> accurate information that affects the calcula-
> tions, the government is not bound to make the
> recommendations contained in this agreement.

Morris reads this provision as prohibiting the government from making any recommendations not mentioned in the plea agreement and requiring the government to recommend a sentence within a Guidelines range of 57–71 months.

That's an overreading of the agreement. Paragraph 14 required the government to make the three sentencing recommendations contained in the plea agreement unless Morris provided "false, incomplete, or inaccurate information that affect[ed] the calculations." Nothing in paragraph 14 suggests that the government was limited to making only those recommendations. Indeed paragraph 21, which falls under the "Sentencing Recommendations" heading, is directly to the contrary: "Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement." Likewise paragraph 14 does not even mention a Guidelines range of 57–71 months, let alone require the government to recommend a sentence within that range. To the contrary, paragraph 22 requires the government "to recommend a sentence within the [S]entencing [G]uidelines range as determined by the [district court]."

Morris relies on *United States v. Navarro*, 817 F.3d 494 (7th Cir. 2015), for the proposition that the government breached the plea agreement by recommending an enhancement that

the parties had not discussed. But in *Navarro* the government advocated for an upward *variance* from the Guidelines range that the district court had calculated, not an *enhancement* to the defendant's base offense level. The distinction is important: By recommending an upward variance, the government violated the express terms of the plea agreement, which required it to recommend a sentence within the Guidelines range calculated by the district court. *Id.* at 499. In the present case, the government recommended an enhancement, which is not equivalent to seeking a sentence outside the Guidelines range. *Cf. id.* at 500 ("We have recognized a clear distinction between adjustments to the [G]uidelines range and departures from them."). Nothing in the plea agreement prohibited the government from making that recommendation.

In short the government fulfilled all of its obligations under the plea agreement, so there was no breach. Morris is not entitled to resentencing on this basis.

### B.  Enhancement for Possession of a Dangerous Weapon

Morris also renews his objection to the judge's application of a two-level enhancement for possessing a dangerous weapon in connection with a drug offense. The basis for the enhancement was the handgun that agents found when they searched Morris's residence. Morris contends the government failed to establish that he possessed the handgun. We review the judge's application of the enhancement for clear error. *United States v. Strode*, 552 F.3d 630, 635 (7th Cir. 2009).

Section 2D1.1(b)(1) provides for a two-level increase in the base offense level for a drug offense "[i]f a dangerous weapon (including a firearm) was possessed." Application

note 11 explains that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." § 2D1.1 cmt. n.11. We have construed this provision to require the government to prove by a preponderance of evidence that the defendant possessed a weapon. *United States v. Orozco*, 576 F.3d 745, 751 (7th Cir. 2009). The government can satisfy its burden by showing either actual possession or constructive possession, meaning "the defendant had the power and the intention to exercise dominion or control of the firearm." *United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005). If the government meets its burden, the defendant must show that it's clearly improbable he possessed the weapon in connection with the drug offense. *Orozco*, 576 F.3d at 751.

At sentencing the government pointed to the handgun's location adjacent to Morris's bedroom in the residence that Morris and Hayes shared. The government also noted that the gun was found near a small quantity of heroin and a variety of materials used to package heroin, including a hydraulic press, razor blades, scales, and plastic bags. These facts are easily sufficient to establish that Morris, a convicted heroin distributor, constructively possessed the handgun. *See Bothun*, 424 F.3d at 585–86 (holding that the government established possession based solely on the fact that the weapons were found in the defendant's home and near drug paraphernalia); *see also United States v. Smith*, 308 F.3d 726, 746 (7th Cir. 2002) (holding that the defendant possessed firearms based on their location at his residence and business).

Citing *United States v. Harris*, 230 F.3d 1054 (7th Cir. 2000), Morris argues that the proximity between the hand-

gun and his bedroom is not enough to establish that he possessed the handgun. *Harris* is inapposite. In that case the defendant's only connection to a weapon was the fact that he worked in various drug houses where firearms were stored and where other individuals regularly carried and used firearms. The government conceded that the defendant himself had never used or carried firearms, but it argued that his access to the firearms and his proximity to others who used them amounted to constructive possession. We rejected that argument, stating that the defendant's "proximity to the firearms … [was] insufficient to constitute constructive possession." *Id.* at 1057. In the present case, the government did *not* concede that Morris never used or carried the handgun found in his residence. To the contrary, the prosecutor argued that the gun's location in Morris's residence and near his personal effects permits the inference that the gun belonged to Morris. As we've just explained, that inference is entirely justifiable.

Because the government established that Morris possessed the handgun, the burden shifted to Morris to show that it's clearly improbable that he did so in connection with his heroin-distribution activities. He didn't come close making that showing, given the gun's proximity to his bedroom and its location next to a small quantity of heroin and a variety of packaging materials. *See Bothun*, 424 F.3d at 586 ("[G]uns found in close proximity to drug activity are presumptively connected to that activity." (quotation marks omitted)). The judge was right to apply the two-level enhancement under § 2D1.1(b)(1).

AFFIRMED.