In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-3870

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MOHAMED FADIGA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:15CR43-001 — **Philip P. Simon**, *Judge.*

ARGUED MAY 18, 2017 — DECIDED JUNE 1, 2017

Before BAUER, EASTERBROOK, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* A jury found Mohamed Fadiga guilty of possessing more than 15 unauthorized "access devices"—gift cards that had been fraudulently reencoded—and a judge sentenced him to 30 months' imprisonment. See 18 U.S.C. §1029(a)(3). He contends that police learned about the crime by violating the Fourth Amendment and that the jury pool was the result of racial discrimination.

A police officer stopped a car that had an expired license plate. He asked Mamadu Barry, the driver, for registration papers, which he did not have; Barry also professed not to know who owned the car or where he was driving to. So the officer asked Fadiga, who was in the passenger's seat. Fadiga replied that "a friend" owned the car and produced, not a registration document, but a rental agreement. The car's return was past due under that agreement, which did not authorize either Barry or Fadiga to drive the car. When Fadiga opened his wallet to extract his driver's license, the officer saw oodles of plastic cards in lieu of money. Now suspicious, he asked Barry and Fadiga for permission to search the car; both consented. The search turned up a bag full of gift cards, and the officer asked his dispatcher to send someone with a card reader to determine whether the cards were legitimate. About half an hour later the card reader arrived and detected that the cards had been tampered with.

Fadiga's motion to suppress the evidence rests on the delay between the officer's call and the card reader's arrival. *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), holds that police violate the Fourth Amendment by extending a traffic stop to allow time for a drug-detection dog to arrive, unless reasonable suspicion justifies an investigation. District Judge Lozano concluded that the unless clause of *Rodriguez* has been satisfied: the police reasonably suspected that the car's occupants possessed doctored gift cards. 2015 U.S. Dist. LEXIS 91006 (N.D. Ind. July 14, 2015). Later the case was transferred to Judge Simon, who agreed with Judge Lozano and denied a motion for reconsideration. 2016 U.S. Dist. LEXIS 65316 (N.D. Ind. May 18, 2016).

We agree with both district judges. The car's occupants consented to a search, which turned up far more gift cards than the most avid shopper carries. That plus other suspicious details—Barry's professed ignorance of the car's ownership and destination; Fadiga's assertion that an unnamed friend owned the car, coupled with a rental contract that did not permit either Barry or Fadiga to operate the car—justified detention to learn more. *Rodriguez* tells us that reasonable suspicion permits a delay for the arrival of investigative resources. 135 S. Ct. at 1615–16. And that's not all. *Rodriguez* dealt with a situation in which the car's occupants could drive away lawfully, if not detained by the police. But Fadiga and Barry did not appear to have any right to use the car. The return date on the rental contract had passed, and neither Fadiga nor Barry had been authorized to drive the car. Whether or not they waited for a card reader, the police were entitled to detain Fadiga and Barry until their authority to use the car had been determined. Extending the traffic stop therefore did not violate the Constitution.

Now for the argument about discrimination. The venire from which the jury was to be selected comprised 48 persons, none of them black. Fadiga asserted that this must have been the result of racial discrimination. Asked for supporting evidence, Fadiga's lawyer offered none. The judge ruled that a person who protests the composition of the pool from which a jury is drawn must show that some discriminatory practice produced the racial imbalance. 2016 U.S. Dist. LEXIS 71102 (N.D. Ind. June 1, 2016), citing, e.g., *United States v. Phillips*, 239 F.3d 829, 842 (7th Cir. 2001) ("[T]he makeup of any given venire is not significant, provided all rules for selection have been observed.").

Fadiga's appellate brief tries to supply some of what was missing in the district court. His lawyer observes that the population of the two counties (Lake and Porter) from which the jury pool came is approximately 20% black, and he asks us to infer that a discriminatory practice must have existed. Zero for 48 from such a population is exceptional, but Fadiga has not attempted to estimate the probability that it could occur by chance—nor has he provided data about voter registration or the age distribution of the counties' population (people under 18 are ineligible to serve on juries). The plan at the time of Fadiga's trial drew from lists of registered voters; since then, the Northern District of Indiana has amended its plan to include as potential jurors everyone with government-issued identification such as a driver's license, plus all resident taxpayers, whether or not registered to vote.

For a challenge to the composition of a jury pool to succeed, counsel must show how the venire was selected. The Jury Selection and Service Act, 28 U.S.C. §§ 1861–78, provides a means to do that, and §1867(d) entitles litigants to hearings before jury selection begins if they can show what seems to be a substantial departure from expectations. Litigants who invoke this statute are entitled to discovery. See §§ 1867(f), 1868. The statute adds that the "procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime … may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title" (§1867(e)).

The record does not offer any reason to think that the rules of the Northern District's former plan were either biased or bypassed. The plan is race-blind and before its amendment should have produced venires that in aggregate

tracked the population of registered voters—at least if all groups respond to jury summonses at the same rate, another question on which the record is silent. It is possible to imagine things going wrong, such as a batch of jury summonses being sent to a single town or precinct that is predominantly white, but there's no evidence that this, or anything else, did go wrong. As no one is entitled to racial balance on any particular jury, see *Holland v. Illinois*, 493 U.S. 474, 480 (1990); *United States v. Ashley*, 54 F.3d 311, 315 (7th Cir. 1995), the district court properly rejected Fadiga's complaint about this pool.

AFFIRMED