In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 16-2342 & 16-2375

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTWON WILLIS and ERICKA SIMMONS,

*Defendants-Appellants.*

_____

Appeals from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:14-cr-83 — **Jon E. DeGuilio**, *Judge.*

_____

ARGUED FEBRUARY 23, 2017 — DECIDED AUGUST 18, 2017

_____

Before POSNER, EASTERBROOK, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* Antwon Willis and Ericka Simmons were convicted of conspiracy to distribute 100 grams or more of heroin and sentenced to 235 months' and 108 months' imprisonment, respectively. They appeal their convictions, claiming there was an impermissible variance from the indictment. They also claim the jury pool failed to include a fair cross-section of their community because only

one of the 48 members of the venire was black. Simmons also challenges the district court's jury instruction related to the amount of heroin involved in her offense. Finally, Simmons argues that the district court erred in enhancing her sentencing offense level for possession of a gun during the commission of a drug offense. We affirm.

I.

While this appeal concerns legalistic quibbles, the facts underlying this case reveal the dark underbelly of the world of heroin addicts. Over the course of a week, a jury heard from scores of witnesses: from the doctor's son—a former Big Ten soccer player who turned to heroin after tearing his ACL and becoming addicted to his opioid-based prescription pain killer—to the young couple with good-paying union jobs who tried heroin one night at a party only to develop a hundred-dollar-plus-a-day addiction that left them overdosing in their car and later serving time in prison. Unfortunately, as the law enforcement officers who also testified confirmed, these realities have become all too commonplace.

According to witnesses, Antwon Willis and Ericka Simmons were behind much of the heroin making its way into Michigan City and surrounding communities in the Northern District of Indiana. They were tried jointly on one count of conspiracy to distribute more than 100 grams of heroin. Over the course of the week-long trial, the jury heard from a total of twenty witnesses, including police officers and DEA agents, former heroin addicts who had purchased heroin from Willis and Simmons, and Simmons herself—who denied any knowledge of Willis's drug-dealing. Because this appeal comes to us following a full trial, we present the facts

in the light most favorable to the government, drawing all reasonable inferences from that evidence in the government's favor. *United States v. Campos*, 541 F.3d 735, 742 (7th Cir. 2008).

At trial, the jury heard testimony that Willis and Simmons met at a party in 2010 and began dating shortly thereafter. They later moved in together in a house in Illinois. While living in Illinois, Willis sold substantial quantities of heroin to a variety of users. In the summer of 2010, law enforcement officers arrested Willis after using a confidential informant to purchase 50 grams of heroin from him. The informant testified about his relationship with Willis and explained how Willis sold the heroin packaged in capsules with each capsule containing about 1/10 gram of heroin. Willis sold 14 capsules for $100, or at about $7 each. This modus operandi would later lead law enforcement officers to connect Willis with the heroin distributed in the Michigan City, Indiana area.

Several heroin users from Michigan City also testified. They told the jury that they had purchased heroin from Willis or Simmons in both Illinois and Indiana. They explained that they would text Willis when they wanted heroin and Willis would direct them to meet him or Simmons, typically in a parking lot. The sales often took place in cars with a "toss over": Willis or Simmons would toss over a cigarette case filled with heroin and the buyer would toss over one filled with cash. Several witnesses identified Simmons as the woman they met at Willis's direction. Additionally, Brittany LeMond and her boyfriend Derrick Penwell—union boilermakers—testified that they would call Willis to buy heroin and then either Simmons or Willis would complete the sale

in front of a Hammond, Indiana apartment complex where the couple had moved in 2011.

Besides purchasing heroin outside the Indiana apartment complex, when LeMond and Penwell were working out-of-state they wired money for the drugs via Moneygram and Willis would send them heroin through the mail. Willis directed LeMond and Penwell to send the money in Simmons's name and Simmons retrieved the funds—$18,485 in total. At the approximately $7 per gram price to which the witnesses attested, the quantity of heroin involved in just the Moneygram transactions easily exceeded the 100 grams charged in the indictment.

Willis and Simmons later moved back to Illinois, living together in a house on Henry Street in Lansing. In October 2014, after authorities connected the dots between Willis's operations in Illinois and the recent influx in northern Indiana of heroin-filled capsules, officers arrested Willis. A search of the Henry Street house revealed empty capsules, a mixer, a box full of Dormin (which is a substance used to "cut"—or dilute—heroin), and a vial containing heroin. In a bedroom of the home were more Dormin bottles, a change of address form with Simmons's name, and more capsules. Officers also recovered a handgun from a shelf in the bedroom closet.

Willis was later charged along with eight other individuals in a nine-count indictment in the Northern District of Indiana. Willis was named in four counts: one count of conspiracy to distribute heroin and three counts of distribution. Willis's co-defendants all pleaded out. The grand jury later returned a superseding indictment naming only Willis and Simmons and charging them with one count of conspiracy

and five counts of distribution. (Simmons had not been named in the original indictment.) Specifically, the indictment alleged:

> "From an unknown date in 2009, up to and including October 2014, in the Northern District of Indiana and elsewhere, Antwon Willis … and Ericka Simmons … defendants herein, knowingly and intentionally combined, conspired, confederated and agreed with other persons known and unknown to the grand jury, to commit one or more offenses against the United States."

The defendants moved to dismiss the distribution counts, arguing those counts involved drug transactions in Illinois and thus venue in the Northern District of Indiana was improper. The government agreed and dismissed the distribution counts, and then Willis and Simmons pleaded not guilty and proceeded to trial solely on the conspiracy count.

At the start of the jury selection process, only one of the 48 potential jurors appeared to be black. Willis's attorney argued that blacks were severely underrepresented in the panel and asked to have the trial adjourned for a new panel to be drawn. The district court denied the request.

At trial, in addition to the above evidence, Simmons testified in her defense. She told the jury that she had never sold drugs and that she did not know that Willis had sold drugs; rather, she explained that she thought that he was in the construction and home-flipping business. Simmons also

claimed that she had never delivered drugs or met the heroin addicts who had identified her. While she had picked up the funds sent via Moneygram, she had believed that money was for home projects. Simmons admitted, though, that she was with Willis on occasion when he would toss a cigarette pack to people in another car and would receive one in return. Still, she claimed she never knew there were drugs involved and never asked Willis what he was doing.

Willis did not call any witnesses in his defense. Instead, his attorney presented a more novel argument—one that made sense given the overwhelming evidence against him. Willis's attorney admitted that Willis was a drug dealer, but argued that the jury must acquit him because the government had not charged Willis with distribution. Instead, he was charged with conspiring to distribute heroin to "others," namely the Indiana addicts. Claiming the addicts were merely in a buy-sell relationship with Willis, his attorney argued that the government had failed to prove the conspiracy charged in the indictment.

The government responded that several of the witnesses testified that Willis knew they were reselling some of the heroin and the jury could reasonably conclude they were co-conspirators. Alternatively, the government argued that, even if the Indiana buyers weren't co-conspirators, the prosecution did not need to prove that Willis conspired with them because the indictment allowed it to proceed on the narrower theory that Willis had conspired with Simmons. The district court agreed and instructed the jury as follows:

> Count 1 of the Superseding Indictment
> charges each defendant with conspiracy to

distribute heroin. In order for you to find a defendant guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt as to that defendant:

1. The conspiracy to distribute heroin existed, as charged in the Superseding Indictment; and

2. The defendant in question knowingly became a member of that conspiracy with an intent to advance the conspiracy.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt as to a defendant, then you should find that defendant guilty of this charge. If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt as to a defendant, then you should find that defendant not guilty of this charge.

If you find there were two or more conspiracies and a particular defendant was a member of one or more of these conspiracies, you may find that defendant guilty of Count 1 if you further find that this proven conspiracy was included within the conspiracy alleged in Count 1. If, on the other hand, the proven conspiracy is not, you must find the defendant not guilty.

The judge also instructed the jury that merely being in a buy-sell relationship is insufficient to establish a conspiracy—even if the seller knew the buyer intended to resell the drugs. The jury further received a "mere presence" instruction explaining that merely being present at the scene of a drug deal is insufficient to establish a conspiracy.

Additionally, Simmons and Willis were charged with conspiring to sell at least 100 grams of heroin—a quantity which increased the statutory sentencing range from 0-20 years to 5-40 years, 21 U.S.C. § 841(b)(1)(B)(i), 841(b)(1)(C). Therefore, the jury was required to determine whether the conspiracy involved 100 grams or more of heroin. The district court instructed the jury as follows:

> The amount of heroin involved in a defendant's offense includes the amount of heroin that the defendant conspired to distribute while the defendant was a member of the conspiracy and the amount of heroin that the defendant's co-conspirators distributed in furtherance of and as a reasonably foreseeable consequence of the conspiracy while the defendant was a member of the conspiracy.

Following deliberations, the jury found both Willis and Simmons guilty of conspiracy to sell heroin and found they had both conspired to distribute 100 grams or more of heroin. At sentencing, over her objection, Simmons received an enhancement for possessing a gun during a drug trafficking offense based on the weapon recovered from the Illinois

home she shared with Willis. Willis and Simmons both appeal.

## II.

On appeal, Willis and Simmons first jointly argue that they are entitled to a new trial because blacks were underrepresented in the composition of the jury pool. Next, they argue that there was a fatal variance between the conspiracy charged in the indictment and the proof at trial. Simmons alone presents two additional challenges: She claims the judge erred in instructing the jury concerning the quantity of heroin for which she was responsible and that the district court clearly erred in enhancing her sentencing level for possession of a gun in a drug offense. We consider each issue in turn.

### A. Jury Venire

The defendants first argue that they are entitled to a new trial because only one of the 48 members of the jury venire appeared to be black. A defendant is entitled to "be tried by an impartial jury drawn from sources reflecting a fair cross-section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010). In order to prove that a jury venire does not reflect a fair cross-section, and thus constitutes a violation of the Sixth Amendment, a defendant must show that the group excluded was a distinctive group in the community; the representatives of this group in the venire was not fair and reasonable in relation to the number of such persons in the community; and that this underrepresentation was due to systematic exclusion of the group in the jury-selection process. *United States v. Alanis*, 265 F.3d 576, 583 (7th Cir. 2001).

In this case, the defendants cannot show that the un-
derrepresentation of blacks in the jury pool was due to a sys-
tematic exclusion of this group. Rather, the jury venire was
pulled from individuals registered to vote and this court has
previously upheld this methodology for the same court
which tried Willis and Simmons—the Northern District of
Indiana-South Bend division. *United States v. Phillips*, 239
F.3d 829, 840 (7th Cir. 2001) (explaining jury venire is se-
lected at random from the general election voter registration
list of the eleven counties that comprise the South Bend Di-
vision of Northern District of Indiana and upholding jury
selection plan); *Alanis*, 265 F.3d at 583. (rejecting a Sixth
Amendment challenge based on the racial composition of a
jury pool where the defendant did not present evidence of
the racial composition of the eleven counties from which ve-
nires for the South Bend Division of the Northern District of
Indiana are pulled). Further, in *Phillips*, this court rejected a
challenge to a jury pool which involved 48 members with-
out a single black member where there was no evidence of
a flawed methodology for selecting the jury. *Phillips*, 239
F.3d at 841–42. And as we recently held in *United States v.
Fadiga*, 858 F.3d 1061, 1064 (7th Cir. 2017), absent record ev-
idence that the jury-selection rules for the Northern District
of Indiana were biased or bypassed, it was proper for the
district court to reject a challenge to the racial balance of the
jury. Accordingly, we reject the defendants' challenge to the
composition of the jury.

B.  Variance

The defendants next argue that there was a fatal variance
between the conspiracy charged in the indictment and the
government's proof at trial. Specifically, Willis and Simmons

argue that the indictment did not charge them with conspiring with each other—but with conspiring "with others"—but that the judge instructed the jury that the government only needed to prove that each defendant had conspired with one other person. The defendants argue this difference constituted a material variance from the indictment. In support of their position, the defendants highlight other cases in which co-conspirators were explicitly charged with "conspiring with each other." *See, e.g., United States v. Carson*, 9 F.3d 576, 585–86 (7th Cir. 1993); *United States v. Rosenblum*, 176 F.2d 321, 325 (7th Cir. 1949).

There are several problems with the defendants' argument. First, if the indictment did not charge Willis and Simmons with conspiring with each other, then the proper legal challenge would be based on "constructive amendment" and not a variance. *United States v. Burge*, 711 F.3d 803, 813–14 (7th Cir. 2013) (explaining that a constructive amendment occurs if jury instructions allow for the conviction for a crime not charged while a variance does not change the essential substance of the offense).

In any event, contrary to the defendants' position, the indictment—while inartful—did charge Willis and Simmons with conspiring with each other. Here, again, is what the indictment said: "Antwon Willis … and Ericka Simmons … defendants herein, knowingly and intentionally combined, conspired, confederated and agreed with other persons known and unknown to the grand jury, to commit one or more offenses against the United States."

There are two ways to read this language. "Antwon Willis and Ericka Simmons conspired with other persons" or "Anton Willis conspired with other persons" and "Ericka

Simmons conspired with other persons." However, under either reading of the indictment, Simmons and Willis were charged with conspiring with each other. Under the first reading, the duo together conspired with other persons; they could not together agree with a third person unless they were also agreeing with each other. Under the second possible reading, Simmons was charged with conspiring with other persons—which could include Willis—and Willis was charged with conspiring with other persons—which could include Simmons.

Now the use of the plural "other persons" means that at least three people were involved in the conspiracy—Willis, Simmons, and at least one other person. The government argues on appeal that it had presented sufficient evidence that the Indiana heroin buyers who resold the drugs were the defendants' co-conspirators. We need not reach that narrower question. The law in this circuit is clear that "'a prosecutor may elect to proceed on a subset of the allegations in the indictment, proving a conspiracy smaller than the one alleged,' so long as that subset is also illegal. If the conspiracy charged in the indictment includes the smaller conspiracy found by the jury, then the variance will not be fatal, since the indictment would have sufficiently notified the defendants of the Government's accusations." *United States v. Wilson*, 134 F.3d 855, 865 (7th Cir. 1998) (quoting *United States v. Duff*, 76 F.3d 122, 126 (7th Cir. 1996)). See also *Campos*, 541 F.3d at 745 (explaining that *Wilson* "held that it was error to instruct the jury that if the government fails to prove the exact conspiracy charged in the indictment, the jury should acquit").

In this case, as the government argued below, a conspiracy between just Willis and Simmons constituted a subset of the broader "with other persons" conspiracy charged in the indictment. Because it was equally illegal for two to conspire together as for three or more to do so, the variance is not fatal. *United States v. Cooper*, 767 F.3d 721, 727 (7th Cir. 2014) (explaining that to convict on a conspiracy charge the government must prove, among other things, that "two or more people agreed to commit an unlawful act"); *United States v. Moreland*, 703 F.3d 976, 984 (7th Cir. 2012) ("Conspiracy is agreement, and it takes two to agree.").

C. Simmons's Additional Challenges

Simmons presents two additional challenges. First, she argues that the district court erred in instructing the jury concerning quantity of drugs involved. Here's the instruction given:

> The amount of heroin involved in a defendant's offense includes the amount of heroin that the defendant conspired to distribute while the defendant was a member of the conspiracy and the amount of heroin that the defendant's co-conspirators distributed in furtherance of and as a reasonably foreseeable consequence of the conspiracy while the defendant was a member of the conspiracy.

Simmons argues this instruction was flawed because it "invite[d] the jury to determine that Ericka Simmons [was] responsible for the amount of heroin Anton Willis distributed even if that amount was not foreseeable to her because of her particular conspiratorial agreement." The instruction,

however, expressly limited a defendant's responsibility to quantities reasonably foreseeable to that defendant while a member of the conspiracy. We fail to see how the instruction represented an incorrect or incomplete statement of the law. *United States v. Daniel*, 749 F.3d 608, 613 (7th Cir. 2014).

Moreover, any error in this instruction would have been harmless since the evidence that Simmons conspired with Willis to sell 100 grams or more of heroin was overwhelming. Specifically, the evidence established that Simmons retrieved over $18,000 in Moneygram transfers for heroin delivered by Willis. At the approximately $7 per capsule rate, those transactions alone represented well over 100 grams of heroin.

Finally, Simmons challenges her sentence, arguing the district court erred in enhancing her sentencing level for possession of a gun during a drug trafficking offense pursuant to U.S.S.G. § 2D1.1(b)(1). That section provides for a two-level enhancement when "a dangerous weapon (including a firearm) was possessed" during a drug trafficking offense. "Possession" means "either actual possession or constructive possession, meaning [she] had the power and the intention to exercise dominion or control over the firearm." *United States v. Morris*, 836 F.3d 868, 872 (7th Cir. 2016). Further, a defendant is liable if the possession was reasonably foreseeable in furtherance of the jointly undertaken criminal activity. *United States v. Ramirez*, 783 F.3d 687, 690–91 (7th Cir. 2015).

While Simmons focuses on the lack of evidence that she personally possessed the gun, that argument is not helpful to her appeal for three reasons. First, the evidence was sufficient to show that Willis possessed the gun and given its

location and the location of the drugs and the drug para-phernalia, his possession was reasonably foreseeable to Simmons. These facts are sufficient to justify the enhancement based on co-conspirator liability. Second, the evidence sufficiently established that Simmons constructively possessed the gun given that it was in the closet of the bedroom she shared with Willis and, again, near drugs and drug para-phernalia. Under these circumstances, there is no clear error in enhancing Simmons's sentence for possession of the gun. Finally, had there been error, it would have been harmless because the district judge expressly stated that he would have sentenced Simmons to the same term of imprisonment even had he calculated a different guideline range. *See United States v. Tate,* 822 F.3d 370, 377 (7th Cir. 2016).

## III.

By conspiring together to distribute heroin—a charge contained within the broader indictment—Willis and Simmons have destined themselves to long terms of imprisonment. While they seek to avoid that outcome by challenging the racial composition of the jury pool, they have failed to show a Sixth Amendment violation. Simmons also cannot show any error in the jury instruction or the district court's assessment of an enhancement for possessing a firearm during a drug trafficking offense; and even if she could, any error would be harmless. For these and the foregoing reasons, we AFFIRM.